**Dolores M. DOYLE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 17110.

United States Court of Appeals
Eighth Circuit.

June 12, 1963.

**420**

Theodore F. Schwartz, Clayton, Mo., made argument for the appellant and Charles M. Shaw, Clayton, Mo., filed brief.

Donald L. Schmidt, Asst. U. S. Atty., St. Louis, Mo., made argument for the appellee and Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., was with him on the brief.

Before VOGEL, VAN OOSTERHOUT and RIDGE, Circuit Judges.

VOGEL, Circuit Judge.

Dolores M. Doyle, appellant, was indicted, tried by a jury and convicted of having violated the provisions of 29 U. S.C.A. § 501(c), which deals with the embezzlement, theft, conversion, etc., of assets of a labor organization by an officer or employee thereof. She was sentenced to a period of confinement of 18 months. Appeal followed. In asking this court to set aside the judgment and direct appellant's acquittal, three contentions are made which will be dealt with in the order in which they appear in appellant's brief.

Appellant's first contention is that:

"The indictment is fatally defective in that it fails to allege that the appellant acted with felonious intent and further fails to secure the accused the right to plead a former acquittal or conviction to a second prosecution."

The statute under which the indictment was drawn and which the appellant is charged with having violated is:

29 U.S.C.A. § 501(c):

"Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both."

The indictment, which was in one count, provided as follows:

"The Grand Jury charges:

"That between on or about September 14, 1959 and on or about De-

cember 31, 1960, at St. Louis, Missouri, within the Eastern Division of the Eastern District of Missouri,

Dolores M. Doyle

while employed by St. Louis Printing Pressmen and Assistants Union Number 6, Incorporated (Local 6) of St. Louis, Missouri, did embezzle, steal, or unlawfully and willfully abstract or convert to her own use, or the use of another, the sum of approximately $16,156.92 of the moneys, funds, property and assets of the St. Louis Printing Pressmen and Assistants Union Number 6, Incorporated (Local 6), a labor organization engaged in an industry affecting commerce as defined by Section 402(i) and 402(j), Title 29, United States Code.

"In violation of Section 501(c), Title 29, United States Code."

With reference to the claim that the indictment fails to secure appellant's right to plead former jeopardy to a second prosecution, it should be noted that the indictment specifically embraces the elements of the offense provided for in the statute. We further believe that it adequately and fully informs the appellant of the charge against her so that she could prepare to defend. It is also sufficiently specific in identifying the crime so that a conviction or acquittal thereof could be grounds for the defense of double jeopardy in the event of a similar charge against her in the future. It charges that at the times specified the appellant did embezzle, steal or unlawfully and willfully abstract or convert to her own use or the use of another money of the labor organization of which she was an employee and that this occurred while she was so employed, all in violation of the identified statute.

In Hagner v. United States, 1932, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861, the Supreme Court said:

" * * * The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' Cochran and Sayre v. United States, 157 U.S. 286, 290 [15 S.Ct. 628, 39 L.Ed. 704]; Rosen v. United States, 161 U.S. 29, 34 [16 S.Ct. 434, 40 L.Ed. 606]."

Judge John Sanborn, in Hewitt v. United States, 8 Cir., 1940, 110 F.2d 1, certiorari denied, 310 U.S. 641, 60 S.Ct. 1089, 84 L.Ed. 1409, said at page 6 of 110 F.2d:

"The sufficiency of an indictment should be judged by practical, and not by technical, considerations. It is nothing but the formal charge upon which an accused is brought to trial. *An indictment which fairly informs the accused of the charge which he is required to meet and which is sufficiently specific to avoid the danger of his again being prosecuted for the same offense should be held good.*" (Emphasis presently supplied.) See also Hanf v. United States, 8 Cir., 1956, 235 F.2d 710, 713–714, certiorari denied, 352 U.S. 880, 77 S.Ct. 102, 1 L.Ed.2d 81; and Keys v. United States, 8 Cir., 1942, 126 F.2d 181, certiorari denied, 316 U.S. 694, 62 S.Ct. 1296, 86 L.Ed. 1764.

As to the assertion that the indictment is defective in that it fails to allege that the appellant acted with felonious intent, reliance is had mainly upon Morissette v. United States, 1952, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288. That case did not deal with the sufficiency of the indictment and is not authority for appellant's contentions here. True, the indictment in Morissette did not specifically allege felonious intent but the reversal therein was not predicated upon that ground. The case holds that criminal intent was an essential element of

an offense under 18 U.S.C.A. § 641 which provided that:

"Whoever embezzles, steals, purloins, or knowingly converts * *."

property of the United States shall be punished, etc. *The trial judge there* withdrew the issue of intent from the jury on the ground that the law raises a presumption of intent from the commission of the act. Holding this to be reversible error, the Supreme Court stated at pages 273–274 of 342 U.S., page 255 of 72 S.Ct.:

"As we read the record, this case was tried on the theory that even if criminal intent were essential its presence (a) should be decided by the court (b) as a presumption of law, apparently conclusive, (c) predicated upon the isolated act of taking rather than upon all of the circumstances. *In each of these respects* we believe the trial court was in error.

"Where intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury. * * * "

In a complete and accurate charge, Judge Regan in this case told the jury, inter alia:

"You will note that in the indictment, as well as in the statute, the words 'willfully' and 'unlawfully' are used.

"You are advised that the word 'willfully' as used, means intentionally, that is, not accidentally.

"The word 'unlawfully' as used means without legal justification, or without authority of law.

"The question of intent is a matter for you, as jurors, to determine, and *as intent is a state of mind and it is* not possible to look into a man's mind to see what went on, the only way you have of arriving at the intent of the defendant in this case is for you to take into consideration all of the facts and circumstances shown by the evidence, including the exhibits, and determine from all such facts and circumstances what the intent of the defendant was at the time in question.

"Thus, direct proof of willful or wrongful intent or knowledge is not necessary. Intent and knowledge may be inferred from acts and such inferences may arise from a combination of acts, although each act standing by itself may seem unimportant. These are questions of fact to be determined from all of the circumstances."

We think it clear from the foregoing that Judge Regan treated the element of criminal intent as an essential part of the offense and that the case was tried and submitted to the jury with intent being a prerequisite to conviction. The jury obviously found and the record amply supports the conclusion that the appellant at the time of the commission of the acts charged possessed the intent to embezzle, steal or unlawfully and willfully abstract or convert money of the labor organization.

The indictment herein meets every requirement of Rule 7(c) of the Federal *Rules of Criminal Procedure,* 18 U.S. C.A., and of the cases wherein the sufficiency of an indictment has been challenged and we therefore find it not vulnerable to appellant's first claim of error.

Appellant next contends that:

"The indictment fails to charge with sufficient legal certainty the necessary facts to establish the crime of embezzlement."

Appellant argues, in support of such contention, that:

" * * * The indictment fails to set out the fiduciary capacity of the appellant and her relation to the money and funds of the Pressmen's Union. This relation is necessary to distinguish a knowing conversion or unauthorized use from a felonious embezzlement."

Appellant cites Moore v. United States, 1895, 160 U.S. 268, 16 S.Ct. 294, 40 L.Ed. 422, and Shaw v. United States,

6 Cir., 1908, 165 F. 174. In each of such cases the defendant was charged with embezzling certain property while employed in the Postal Service of the United States. The indictments were held insufficient on the ground that it was necessary to allege the capacity in which the property was received in order to support a conviction of embezzlement. The indictment with which we are here concerned, however, does not simply allege that the defendant embezzled certain property while employed by the union but goes farther and charges, " * * * did embezzle, steal, or unlawfully and willfully abstract or convert to her own use, * * *." The Supreme Court of the United States in United States v. Northway, 1887, 120 U.S. 327, said at page 332, 7 S.Ct. 580, at page 583, 30 L.Ed. 664:

> " * * * But it is evidently the intention of the statute not to use the words 'embezzle' and 'wilfully misapply' as synonymous. In order to misapply the funds of the bank it is not necessary that the officer charged should be in actual possession of them by virtue of a trust committed to him. He may abstract them from the other funds of the bank unlawfully, and afterwards criminally misapply them, or by virtue of his official relation to the bank he may have such control, direction, and power of management as to direct an application of the funds in such a manner and under such circumstances as to constitute the offence of wilful misapplication. * * * "

The indictment here, considered in its entirety, was sufficient to apprise the appellant of the full import of the charges against her; i. e., that between certain dates while employed by the union she appropriated union funds to her own use or the use of another. It is not an essential element of the crime charged that the moneys had been held by the appellant in some fiduciary capacity. We conclude that the appellant's second claim of error is also without merit.

The last assignment charges insufficiency of the evidence to sustain a conviction.

Under this heading appellant asserts that the evidence shows that she was not the only person who received dues and made entries thereof; that there was no evidence to prove that she had taken any cash or endorsed any checks; that the evidence fails to show an appropriation by her; and, additionally, that the government failed to rebut testimony that she had no money, substantial belongings or had made unusual expenditures during the period covered. We have examined the 557 pages of testimony. We have done so in light of the rule that there having been a conviction, the testimony must be viewed in the light most favorable to sustaining such conviction and that all fair inferences reasonably to be adduced from such testimony should be resolved in favor of the jury's conclusion. Northcraft v. United States, 8 Cir., 1959, 271 F.2d 184.

We believe no real purpose would be served here by reciting in minute detail the testimony of the several accountants, the members of the office staff and of the appellant herself. Summarized, the testimony reflects that the procedure for the handling of members' dues money, which appellant was charged with converting, was as follows:

Upon the receipt of a union member's dues, a stamp, bearing the word "cancelled", the amount paid and the initials of the person receiving the payment, was placed in the individual's working card. This was the member's own receipt. Thereupon the payment was recorded in the union members ledger which was retained in the office. This ledger was maintained for the purpose of recording the amount that each individual owed, the date such sum was due and the date upon which it was actually paid. Payment in the members ledger was then posted in the cash receipts journal, which was the financial record kept for purposes of the union's banking procedures. When each page in the cash receipts journal was completed, the columns were to-

talled and the amount entered upon a bank deposit slip and such amount so shown was deposited with the bank.

Mrs. Doyle had worked in the office of the Pressmen's Union as a bookkeeper since 1955. Her principal duties consisted of receiving the dues payments from the union members, the entering of the payments in the individual members ledger and in the cash receipts journal, the placing of an initialled cancelled stamp in the working card dues book of the paying member, the totalling of the amounts in the cash receipts book at the end of each page, and the preparation of the bank deposits. While it is true that other members of the office staff did on occasion perform these identical duties, the evidence established the fact that Mrs. Doyle was primarily responsible for their discharge.

The shortages discovered in the union's funds for the indictment period and for various periods preceding and following the indictment period were all found to be due to two causes: First, failure to record the payment in the cash receipts journal; and, second, underfooting of totals in the cash receipts journal. As to the first method, it was shown that a member's payment would be recorded in the members ledger and on the individual working card so that the member would be shown as current in his dues but the payment would not appear in the cash receipts journal. Members who paid by check would have their checks substituted in the bank deposit for cash payments in the same amount which had been properly recorded in both books. With two or three exceptions, all of the definitely established omissions followed entries in appellant's handwriting. The exceptions pertained to rare and admittedly inadvertent omissions by some other member of the office staff.

As to the second method or cause of shortage, it was shown that in 22 of the 23 times that such underfootings appeared, they were for the identical sum of $50 and it was necessary to underfoot this amount in two columns on each page. This made a total of 44 times that the underfooting was exactly $50. The testimony reflected that all of such underfootings were in Mrs. Doyle's handwriting.

Expert accountants testified that the consistency and extreme similarity of the shortages indicated deliberate design rather than accident or "honest error". Additionally, if the failure to record payments in the cash receipts journal had been accidental, the missing amounts would have eventually appeared in the petty cash fund as overages. While overages did on occasion turn up, they in no way approached the total sum missing. The testimony also reflected that the discovery of appreciable overages was always made by someone other than Mrs. Doyle.

On occasions Mrs. Doyle was alone in the office for sustained periods of a number of days each. During such periods substantial shortages were found. All completed transactions during those periods were in Mrs. Doyle's handwriting. On the other hand, when Mrs. Doyle was absent from the office for more than a day no unexplained shortages were discovered. Finally, there were similar shortages for a period in which Mrs. Doyle was the only one of the present office staff employed by the union.

■ All of the evidence was circumstantial. No one saw the appellant take any part of the missing funds and she denies having done so. It was, nevertheless, for the jurors, as the finders of the facts, to weigh the evidence pro and con, to draw inferences reasonably supported by the evidence and in the end to say whether the government had established Mrs. Doyle's guilt beyond a reasonable doubt. On the record, we must conclude that the evidence, circumstantial though it is, when viewed in a light most favorable to sustaining the jury verdict, amply supports the finding of guilty.

■ There is here also the additional assertion that since the testimony is devoid of any evidence of an increase in appellant's net worth and no evidence of unusual expenditures, that the govern-

ment has failed to prove an essential element of the crime. In support of this assertion, the appellant cites Hansberry v. United States, 9 Cir., 1961, 295 F.2d 800, in which the court allowed the admission of evidence of the defendant's increased net worth. The Court of Appeals for the Ninth Circuit said, at page 807 of 295 F.2d:

"Clearly, evidence of large expenditures or the acquisition of large *unexplained* sums of money, during the time charged as that during which the embezzlement took place, is *some* evidence of such embezzlement. * * *" (Second emphasis supplied.)

Certainly the case is not authority for the assertion that the government must establish an increase in net worth or unusual expenditures in order to create a submissible issue. In a case such as this, the government has the burden of establishing beyond a reasonable doubt that the appellant took the money as charged but there is no burden on the part of the government to prove what the appellant did with it after the taking.

Finally, the appellant, directing attention to the fact that other members of the office staff had access to the books, asserts that where two conclusions could be drawn as reasonably one way as the other, one pointing to guilt and one to innocence, the presumption of innocence must prevail, citing McCoy v. United States, 9 Cir., 1948, 169 F.2d 776, certiorari denied, 335 U.S. 898, 69 S.Ct. 298, 93 L.Ed. 433, wherein a jury instruction to that effect received approval. We find in the instant case the trial court very adequately took care of appellant's contention by charging the jury:

"* * * It is not only necessary that all of the evidence concur and show the existence of the facts sought to be proved by the Government, but said circumstantial evidence must be inconsistent with innocence or any other rational conclusion than that of guilt."

And:

"* * * if you can reconcile the evidence before you upon any reasonable hypothesis consistent with the defendant's innocence, you should do so, and in that case find her not guilty."

On the record in this case we cannot say that the jury was not fully justified in concluding that the appellant's guilt was the only reasonable hypothesis to be drawn therefrom. See United States v. McCarthy, 7 Cir., 1952, 196 F.2d 616, and Roberts v. United States, 5 Cir., 1945, 151 F.2d 664.

We have considered this case in its entirety and are convinced that the appellant had a fair trial, that the trial court committed no reversible error, and that the evidence amply supports the verdict of guilty.

Affirmed.