UNITED STATES of America, Appellee,

v.

Harest Tancle BRYANT, Appellant.

No. 19951.

United States Court of Appeals, Eighth Circuit.

Aug. 4, 1970.

**238**

Hartman Hotz, Fayetteville, Ark., for appellant.

Robert F. Fussell, Asst. U. S. Atty., Little Rock, Ark., for appellee; W. H. Dillahunty, U. S. Atty., on the brief.

Before VAN OOSTERHOUT, ME-HAFFY and LAY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is a timely appeal by defendant Bryant from his conviction by a jury on Counts I and III of an indictment and the resulting sentence of eighteen months imposed.

Defendant during the times here material was business representative and a member of Local 1328, Laborers, AFL-CIO, of Jonesboro, Arkansas. Count I charged the defendant with unlawfully embezzling, abstracting and converting to his own use $8,080 in union funds in violation of 29 U.S.C.A. § 501(c). Count III charged that defendant issued a $1,300 check to himself and failed to record the true purpose thereof and that he did thereby conceal the same in violation of 29 U.S.C.A. § 439(c). The remaining counts of the indictment (II, IV and V) were dismissed on the Government's motion.

The following asserted errors are relied upon for reversal:

I. Denial of defendant's motion to dismiss Count III of the indictment as fatally defective for failure to allege willfulness.

II. Denial of defendant's motion for acquittal directed to each count based on insufficiency of the evidence to support a conviction.

III. Error or abuse of discretion on the part of the successor judge in failing to declare a mistrial or grant a new trial.

Essential facts will be set out in the discussion of the asserted errors.

### I.

Defendant's pretrial motion to strike Count III of the indictment is based upon the failure of Count III to expressly include an allegation that the false entry and concealment charged was willful. Count II asserting a different false entry contains in paragraph (1) an allegation that defendant willfully made false entries on the union's books. Count III by its terms incorporates by reference paragraph (1) of Count II. "Allegations made in one count may be

incorporated by reference in another count." Rule 7(c), Fed.R.Crim.P. See 8 Moore's Federal Practice, Cipes, ¶ 7.-04.

It is clear that willfulness is an essential element of the offense charged in Count III. The motion to dismiss recites that the prosecution made the proposal that the court set forth in the instructions that willfulness is an essential element. The court in its instructions clearly set out that willfulness was an essential element. Defendant was at all times aware that the Government was charging that his acts were willful. The indictment when read as a whole, including the incorporation by reference made in Count III, fairly apprises the defendant that the Government is charging that the acts which it claims constitute the offense were willful.

## II.

■ Defendant by a motion for acquittal timely filed challenged the sufficiency of the evidence to support a conviction on each count of the indictment. We have carefully examined the entire record. No purpose will be served in discussing the somewhat extensive evidence in detail. The court properly instructed the jury as to the essential elements of each offense charged. No exceptions have been taken to the instructions and no error with respect to the instructions is urged upon appeal. No errors are asserted with respect to the admission or exclusion of evidence and no prejudicial conduct on the part of anyone is claimed.

Count I alleges willful embezzlement of union funds by means of a series of unauthorized checks aggregating $8,080 issued by the defendant against the union funds and that defendant received the proceeds or benefit of such checks. As the trial court properly advised the jury, a conviction would be supported by proof of willful embezzlement of a substantial amount of the items claimed. Eight of the checks in controversy drawn upon the union, aggregating $4,690, were made payable to the defendant and deposited to his personal account. The check stubs show the checks were issued for advance pay. Defendant told the government investigator that the checks constituted a loan to him. Defendant at the time of the trial changed his position. He testified that he was underpaid when first employed and that he was told that when the union became more prosperous, he would be better compensated. He stated the checks were issued to him to compensate him for back pay to which he was entitled. Defendant's salary was increased from time to time. No authorization is shown for such payments in the minutes of the governing board. Several board members testified that the payments had not been authorized.[1] There is of course also evidence in support of the defendant's position.

---

1. Defendant's counsel in argument on the post-conviction motion stated: "Mr. Bryant did not deny that he signed the checks and that they were used by him. He did, however, claim that he had been authorized to take this money because of some agreement that he had at the time he was employed as business representative of this Union; that at that time the Union was in financial strain, had very little membership, and he was employed for the specific purpose of upgrading the union and increasing the membership and bolstering the treasury; and I'm satisfied this is what he did. From time to time he received certain pay increases, as reflected by the minutes of the Union; certain travel allowances; certain other miscellaneous expense. I believe the proof showed that he had received some $12,000.00 over the same period of time legitimate pay and pay authorized by the board during the same time he wrote the checks for $8,000.00. * * * The Government's proof consisted of various members of the Union and the Executive Board, who denied any knowledge of authorization to Mr. Bryant to receive these amounts. Mr. Bryant himself took the stand and was unable to explain a good many of the transactions, but merely contended that the Union owed that money to him, that he had built the Union and he was paying himself for back pay."

With respect to Count III, a check for $1,300 was drawn on the union funds in favor of defendant and the proceeds thereof used by the defendant. The notation on the stub of the check reads, "pay off old car." The union minutes reflect an authorization of $1,300 to pay such debt in this amount on Bryant's old car. The union had assumed some responsibility for providing the defendant with transportation. The proceeds of the check were not used to pay off the car loan. Bryant later repaid the $1,300 to the union.

Thus there is substantial evidence that the $1,300 check was issued, that the purpose thereof was recorded in the union records by defendant, that the check was in fact issued for a purpose other than that recorded in the union records, that the true purpose of the check was concealed and that defendant's actions in such respects were willful.

The evidence of course must be viewed in the light most favorable to the Government as the prevailing party. When the evidence is so viewed, we have no doubt that substantial evidence supports the guilty verdict on each count.

### III.

The jury returned the guilty verdicts on July 11, 1969. Judge Young, who presided at the trial, on July 18, 1969, entered an order based on the jury verdicts adjudging the defendant guilty as charged on both counts but deferred sentence because no report had been received from the probation officer. Such judgment is not a final judgment as no sentence was imposed. See Berman v. United States, 302 U.S. 211, 212, 58 S. Ct. 164, 82 L.Ed. 204.

Judge Young having pronounced no sentence, this case was assigned to Judge Henley as successor judge pursuant to Rule 25(b), Fed.R.Crim.P., which reads:

"*After Verdict or Finding of Guilt.* If by reason of absence, death, sickness or other disability the judge before whom the defendant has been tried is unable to perform the duties to be performed by the court after a verdict or finding of guilt, any other judge regularly sitting in or assigned to the court may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial."

Defendant on August 25, 1969, more than a month after the filing of the guilty verdicts, filed a motion to set aside the judgment of conviction and to grant a new trial. The motion to set aside was based on the fact that the judgment did not provide for a sentence and hence was not a final judgment. Such motion was granted.[2]

Judge Henley overruled the motion for new trial. The court committed no error in so doing. The motion clearly lacks merit and in substance only points to a conflict in the evidence with respect to defendant's guilt and urges defendant earned or deserved the money he took. Additionally, the motion is not based on newly discovered evidence and hence does not comply with the requirement of Rule 33, Fed.R.Crim.P., that the motion be filed within seven days after the verdict.

The issue of whether the successor judge abused his discretion in determining that he could properly impose sentence in this case is properly before us. On September 18, 1969, defendant appeared before Judge Henley with his counsel for sentencing. Judge Henley advised counsel that since he had not

2. In explanation of the set aside order, Judge Henley states: "In order that there be no question about the timing for appeal and other matters in the case the Court will now set aside that order or rather that judgment of conviction and it will this day impose and enter a judgment and commitment so that the appeal time may run from the date of that particular document, and that will be today."

heard the evidence he would like to have counsel advise him as to the facts. Counsel for the Government and defendant complied. Part of defendant's counsel's statement is set out in footnote 1, supra. Such statement reflects that the sufficiency of the evidence to support the conviction is not seriously challenged.

There is merit to the defendant's contention that in many cases it would be a desirable practice for the successor judge to be provided with a transcript of the trial before he acts. The rule does not make this requirement. Each case must be determined on its own peculiar facts. Here the facts were fairly summarized by counsel before the court acted. The case is a relatively simple one. Judge Young, who had seen and heard the witnesses, had overruled the motion for acquittal and had entered an order convicting the defendant pursuant to the jury verdict on the two counts. It is also noteworthy that no postconviction motion authorized by Rule 29(c), Fed.R.Crim.P., for judgment notwithstanding the verdict was made.

Connelly v. United States, 8 Cir., 249 F.2d 576, cited by the defendant, was a far more complex case than the present one. A motion for judgment n. o. v. was there presented and a number of issues going to the fairness of the trial were raised. We there found no abuse of discretion on the part of the successor judge and we upheld the judgment and sentence he imposed.

The successor judge is by Rule 25(b) given a broad discretion in determining whether he can properly perform the sentencing duties in a case which he did not try. Defendant has failed to demonstrate that Judge Henley abused his discretion in denying him a new trial and in determining that he was in a position to impose a sentence pursuant to the provisions of Rule 25(b).

The judgment is affirmed.