**UNITED STATES of America,**
**Appellee,**

v.

**Clyde R. GOAD et al., Appellants.**

**No. 73–1309.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 12, 1973.

Decided Jan. 14, 1974.

Rehearing and Rehearing En Banc Denied
Feb. 5, 1974.

---

Stanley M. Rosenblum, Clayton, Mo., for appellants.

William M. Piatt, Atty., U. S. Dept. of Justice, Washington, D. C., for appellee.

Before GIBSON, LAY and HEANEY, Circuit Judges.

GIBSON, Circuit Judge.

The four defendants were charged and convicted of violating 29 U.S.C. § 501(c) [1] of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401 *et seq.* (hereinafter Act). Defendants are Donald D. Lane, president of Local 600 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter the Union); Clyde R. Goad, vice-president; Daniel R. Mahany, secretary-treasurer; and Michael Ryan, recording secretary. Defendants each received three different salary increases of $50.00 per week that were not autho-

---

1. 29 U.S.C. § 501(c) provides:

*Embezzlement of assets; penalty*

(c) Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

rized in accordance with the Union's constitution.

The District Court[2] sentenced Lane to two years imprisonment each on Counts 7, 8, and 9, the sentences to run concurrently, and three years probation each for Counts 1 through 6 and 10 through 12, such probation to run concurrently and to be served following completion of the sentence for Counts 7, 8, and 9. Goad received 18 months imprisonment (six months imprisonment and one year probation) each on Counts 1 and 2, to be served concurrently, and three years probation on Count 3 to be served after the sentence on Counts 1 and 2. Ryan received 18 months imprisonment (six months imprisonment and one year probation) each on Counts 4 and 5, to be served concurrently, and three years probation for Count 6, to be served after the sentence for Counts 4 and 5. Mahany received two years imprisonment each on Counts 10 and 11, to be served concurrently and pursuant to parole eligibility under 18 U.S.C. § 4208(a)(2). Mahany also received three years probation for Count 12, to be served after completion of the sentence for Counts 10 and 11. We affirm the convictions of all four defendants.

Members of the Union are 7,500 over-the-road truck drivers operating out of St. Louis and dockhands. The Union is governed by a seven member Executive Board, comprised of the local president, vice-president, secretary-treasurer, recording secretary (the four defendants occupied these offices during the times herein pertinent), and three trustees, all elected by the members every three years. The daily affairs are managed by the four officers, who were in this case first elected in 1968 and reelected by a two-to-one margin in December, 1971. The Union receives over one million dollars in annual dues, and its treasury in December, 1968, totaled approximately $2,000,000.

The previous officers held office for all but one week during 1968 and received the following salaries: president, $21,000; vice-president, $15,000; secretary-treasurer, $19,600; and recording secretary, $17,700. The defendants received the following salaries and expenses from 1968–1971:

| Elected Official | 1968 | | 1969 | | 1970 | | 1971 | |
|---|---|---|---|---|---|---|---|---|
| | Salary | Expenses | Salary | Expenses | Salary | Expenses | Salary | Expenses |
| Lane | $350 | – – – | $23,418 | $6,432 | $34,811 | $6,289 | $36,133 | $6,132 |
| Goad | 300 | – – – | 21,600 | 3,928 | 30,610 | 4,450 | 33,311 | 5,086 |
| Mahany | 300 | $2,173 | 23,771 | 5,303 | 34,814 | 11,677 | 38,742 | 12,524 |
| Ryan | 300 | – – – | 20,870 | 2,595 | 32,062 | 4,982 | 33,728 | 4,974 |

President Donald Lane authorized separate $50.00 per week pay increases for the periods commencing May 24, 1969, October 18, 1969, and January 5, 1970. Neither the Executive Board nor the general membership specifically authorized or approved any of the salary increases. Each salary increase was the basis of a charged violation against each defendant for his own salary increases. Lane, however, was charged with three violations for his own three salary increases and with nine violations relating to the three salary increases for each of the three other officers. The Government did not contend that substantial expense money received was illegal.

Section 7.02(b) of the Union's constitution requires the Executive Board to "[a]pprove the salaries, benefits, allowances, direct and indirect disbursements, expenses and reimbursement of expenses for officers, agents and employees."

2. The Honorable William H. Webster, then United States District Judge of the Eastern District of Missouri, and now of the Eighth Circuit, presided.

The minutes from every Executive Board meeting from December 22, 1968, through October 15, 1972, were admitted into evidence, and no approval of the three salary increases for any of the officers was recorded.[3] Defendants make no claim that the Executive Board or the membership expressly approved of the salary increases, and the three trustees testified that they did not know of the increases. In late 1971, when all of the officers were running for reelection, Union members asked at different Union membership meetings what the officers were being paid. Apparently, Lane responded at these times that "I'll not discuss it with you or anyone else" or "I don't ask what you make and you shouldn't ask me what I make." Mahany often said to "[c]ome on up and look at the books; they are always open." Apparently Union members first learned of the substantial increases in late 1971, when a candidate for president, opposing Lane, obtained accurate salary information from the LM–2 reports filed with the Government pursuant to the Act and mailed copies of those reports to the members.

■ Defendants' main contention is that the following resolution [4] approved by the Union membership granted to the President and Secretary-Treasurer the power to increase salaries without approval of the Executive Board:

> [T]he President and Secretary-Treasurer have the authority, which is hereby confirmed, verified, and extended to make such expenditures and use of Teamsters Local 600 funds and facilities to whatever extent they believe is related to the interests and benefit of Teamsters Local 600 without any prior approval.

We agree with the Government that this general resolution cannot be read as rescinding the specific constitutional provision requiring Executive Board approval of salary increases. To do so would defeat the provisions of the Union's constitution. Defendants urge other contentions that the Union's constitution authorized the salary increases; however, we think that § 702(b) of the Union's constitution clearly takes precedence and provides that salary increases must be approved by the Executive Board.

Defendants also argue that the Government must prove "lack of union benefit" as an essential element of a crime under § 501(c). Since the District Court instructed the jury that a § 501(c) crime contains the essential elements of a specific intent to deprive the union of its funds and an unauthorized expenditure of union funds, defendants argue that it was prejudicial error not to include the alleged element of lack of union benefit. Defendants contend that the essential elements of every § 501(c) crime are: (1) specific intent to deprive the union of its funds, (2) unauthorized expenditure of union funds, *and* (3) lack of union benefit from the expended funds.

■ In order to decide whether lack of union benefit from expended union funds—in this case, unauthorized salary increases—is an element of a § 501(c) crime, we review the legislative history and Congressional purpose of § 501. This court has clearly held that "Congress intended that it [the Act] should not be interpreted by the Courts narrowly or strictly, but, to the contrary, that its confines are broad." Johnson v. Nelson, 325 F.2d 646, 650 (8th Cir. 1963); *accord*, Pignotti v. Local # 3 Sheet Metal

---

3. Previous salary increases granted in 1966 and 1967 were properly approved and recorded in the Board's minutes.

4. The briefs and record do not indicate exactly when this resolution was in effect. Defendants state that it was in effect from 1966 through April, 1972, and was periodically introduced and approved at Union membership meetings. Due to our above discussion in the text, resolution of the effectiveness of the resolution or resolutions is unnecessary.

Workers' Int. Ass'n, 477 F.2d 825, 832–835 (8th Cir. 1973). We said in *Johnson*:

> Thus it plainly appears that the statute is broad in its reach. Officers and other union representatives may not act adversely to their organization or to the members as a group or acquire a personal interest which is contrary to the interests of the organization. Being trustees the officers must subvert their own personal interests to the lawful mandates and orders of the organization.

Johnson v. Nelson, *supra*, 325 F.2d at 650.

Section 501 should be interpreted broadly in order to insure that elected union officials fulfill their responsibilities as fiduciaries to their members, guard union funds from predators, and keep intact all such funds except those expended in the legitimate operation of the union's business. The funds should be treated as trust funds belonging to the union's members. Section 501(a), titled in part "Fiduciary responsibility of officers of labor organizations," specifically states:

> (a) The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder \* \* \*.

Much has been written by many courts concerning the fiduciary responsibility of union officials imposed by § 501,[5] however, House Report No. 741, prepared by the Committee on Education and Labor, trenchantly describes the purposes of the Labor-Management Reporting and Disclosure Act.[6] In commenting on union financial and administrative practices, House Report No. 741 said:

> The members of a labor organization are the real owners of the money and property of such organizations and are entitled to a full accounting of all transactions involving such money and property. Because union funds belong to the members they should be expended only in furtherance of their common interest. A union treasury should not be managed as though it were the private property of the union officers, however well intentioned such officers might be, but as a fund governed by fiduciary standards.

5. *E. g.*, Lawson v. United States, 300 F.2d 252, 254 (10th Cir. 1962) ("highest standards of ethical conduct") ; Johnson v. Nelson, 325 F.2d at 650; United States v. Harmon, 339 F.2d 354, 357 (6th Cir. 1964), cert. denied, 380 U.S. 944, 85 S.Ct. 1025, 13 L.Ed.2d 963 (1965) ; United States v. Silverman, 430 F.2d 106, 113 (2d Cir.) (Moore, J., dissenting on this issue), modified on other grounds, 439 F.2d 1198 (2d Cir. 1970) ; Pignotti v. Local # 3 Sheet Metal Workers' Int. Ass'n, 477 F.2d at 834; United States v. Haverlick, 195 F.Supp. 331, 332 (N.D.N. Y.1961) ("highest standards of responsibility and ethical conduct in administering the affairs of their organization"). Although the section's major thrust is to protect union funds from fiduciary embezzling or converting, this court has held that it is not "an essential element of the crime charged [under § 501(c)] that the moneys had been held by the appellant in some fiduciary capacity." Doyle v. United States, 318 F.2d 419, 423 (8th Cir. 1963).

6. House Report No. 741 discussed the Eliot Bill (H.R. 8342), one of four separate bills covering this same area of labor law. Pignotti v. Local # 3 Sheet Metal Workers' Int. Ass'n, 477 F.2d at 833. The Eliot Bill contained a fiduciary provision identical to a provision contained in the Landrum-Griffin Bill, which eventually became the Labor-Management Reporting and Disclosure Act. Pignotti v. Local # 3 Sheet Metal Workers' Int. Ass'n, 477 F.2d at 833; Johnson v. Nelson, 325 F.2d at 650. House Report No. 741 is, therefore, proper legislative source material to ascertain Congress' purpose in passing § 501.

The conduct of the financial affairs of labor unions and the conduct of union officers in their capacity as officers of labor organizations are matters of proper concern to the Federal Government. This is so because the funds that pass through union treasuries and for which unions and their officers are responsible constitute vast sums of money, and the uses to which these funds are put have a substantial impact on the Nation's economy. Furthermore, if unions are to enjoy the protection of rights and exercise the broad powers which are guaranteed to them by the National Labor Relations Act and the Railway Labor Act, they ought also to be held responsible for abuses that have accompanied the exercise of such powers and rights by some union leaders.

\* \* \* \* \* \*

It is the purpose of this bill to insure that full information concerning the financial and internal administrative practices and procedures of labor organizations shall be, in the first instance available to the members of such organizations.

U.S.Code Cong. & Admin.News, Vol. 2, 86th Cong. 1st Sess.1959, H.Rep.No.741, at 2430.

■■ The statute, cases, and legislative history clearly establish that union officers are fiduciaries for union members, and a willful misappropriation of union funds by officials constitutes a violation of § 501(c). In United States v. Bryant, 430 F.2d 237, 239 (8th Cir. 1970), we indicated that "a conviction would be supported by proof of willful embezzlement." In *Bryant*, however, "lack of union benefit" as an essential element was not raised, and we only stated that "[t]he court properly instructed the jury as to the essential elements of each offense charged." 430 F. 2d at 239. Similarly, other Eighth Circuit cases do not discuss this issue. *E. g.*, Hayes v. United States, 329 F.2d 209 (8th Cir.), cert. denied sub nom. Bennett v. United States, 377 U.S. 980, 84

S.Ct. 1883, 12 L.Ed.2d 748 (1964); Doyle v. United States, 318 F.2d 419 (8th Cir. 1963). The issue of whether "lack of union benefit" is an essential element of the crime under § 501(c) has not been raised before in this circuit. Probably because the common law crime of embezzlement consists of an unauthorized taking for personal use, otherwise stated, a conversion of entrusted funds to the personal use of the fiduciary, any incidental benefits that may fortuitously inure to the benefit of the victim is immaterial. In the broader category of willful misuse or abstraction of union funds and the conversion of them for the personal use of the converter or for non-union purposes, the issue of union benefit might be material where there was proper authorization for the payment of the funds, for example, the payment of authorized political contributions.

The Second Circuit has had occasion to probe this issue more deeply than any of the other circuits. Its decisions in United States v. Silverman, 430 F.2d 106 (2d Cir.), modified on other grounds, 439 F.2d 1198 (2d Cir. 1970), and United States v. Ferrara, 451 F.2d 91 (2d Cir. 1971), present other factual situations as applied to the proscriptions of § 501(c). In *Silverman,* the defendant labor official was charged with violations of § 501(c) in Counts 1 through 8 for political contributions and in Counts 10 through 13 with receiving four Christmas gratuity checks. Judge Moore wrote the majority opinion for all counts except the political contributions charges, and his majority opinion on the § 501(c) counts relating to the Christmas checks affirmed defendant's conviction. Judge Friendly joined by Judge Hays wrote the majority opinion for the charges relating to the political contributions disguised in union records as payments for printing and reversed defendant's conviction on these counts.

In discussion of the Christmas checks counts, Judge Moore stated that defendant argued that the evidence failed "to support a finding that the money was

expended for a non-union purpose." United States v. Silverman, 430 F.2d at 117. However, the discussion on this issue for these charges does not hold that the Government had to prove lack of union benefit. Judge Moore held that only Silverman knew for what purpose the checks were used and that he failed to offer evidence that the checks were used for union benefit. Since the burden of proof for union benefit was placed on defendant, this would seem to imply that "lack of union benefit" would not be an essential element of a § 501(c) violation to be proved by the Government. Judge Friendly did not discuss the counts relating to the Christmas checks.

The political contributions charges are more fully discussed in *Silverman*. Judge Moore, dissenting on these charges, said:

> [A] conviction under section 501(c) may be made out by a demonstration of a fraudulent intent to deprive the union of its funds and either a lack of bona fide authorization *or* an absence of benefit to the labor organization from the expenditure.

United States v. Silverman, 430 F.2d at 117 (emphasis added).

Therefore, according to Judge Moore, the essential elements of a § 501(c) violation vary. First, the essential elements may be: (1) a fraudulent intent to deprive the union of its funds and (2) a lack of authorization according to the union's bylaws and constitution. Second, the essential elements could be: (1) a fraudulent intent to deprive the union of its funds and (2) an absence of benefit to the union. This would most likely apply to the situation where there was authorization on the record but a lack of benefit to the union coupled with a fraudulent intent. United States v. Dibrizzi, 393 F.2d 642 (2d Cir. 1968).

Judge Friendly, whose opinion states the majority view in *Silverman* on the political contributions counts, only assumes *arguendo* that Judge Moore's statement of the essential elements is correct and eventually holds no reason-

able jury could be convinced beyond a reasonable doubt of defendant's guilt on these charges—a failure of proof. The only conclusion, therefore, that can be drawn from *Silverman's* discussion on the political contributions counts is that the essential elements were not delineated.

The Government contends that United States v. Ferrara, *supra*, makes "certain that Judge Friendly * * * had not rejected Judge Moore's analysis in *Silverman*." While that analysis might be correct, we do not read *Ferrara* that broadly. The Government in *Ferrara* introduced evidence that there was a lack of authorization for long-term auto leases made for the personal benefit of the union officials. The court said that "[b]y its verdict of guilty the jury found that appellants, without authority *and for personal* purposes, entered into long-term auto leases for themselves and their Union friends." United States v. Ferrara, 451 F.2d at 96 (emphasis added). It also said in relation to another § 501(c) count that "[t]he first defense to this charge was that the dinners were for Union business, but there was evidence that they were merely social occasions." 451 F.2d at 96. Finally, the court concluded on this charge that "plainly the jury was justified that these were unauthorized expenditures for personal benefit." 451 F.2d at 96. Obviously, the jury could have concluded from the evidence presented that there was *fraudulent intent, lack of authorization, and* lack of union benefit. Since *Ferrara* neither discusses the district court's charge nor states the elements of the offense, we certainly cannot say that the Second Circuit has established lack of union benefit as an essential element of a § 501(c) offense. Rather, Judge Moore's well-reasoned opinion in *Silverman* appears to state the Circuit's view where there is a lack of authorization for the expenditures, and Judge Friendly's opinion in *Silverman* states that Circuit's view where there has been a sufficient authorization.

■ Thus, we cannot accept defendants' view that "lack of benefit to the union" is an essential element in this case involving the unauthorized increased salaries of the Union's officers. We think that the Government sufficiently proved a submissible case by demonstrating that the officers fraudulently intended to deprive the Union of its funds by taking unauthorized salary increases, that is, by knowingly taking increases not authorized according to the Union's constitution and bylaws. According to Judge Moore's statement of the essential elements in *Silverman,* the Government proved a *prima facie* case by establishing fraudulent intent and lack of authorization.

If the Government establishes fraudulent intent and lack of proper authorization, it should not also be saddled with an additional burden of proving lack of benefit to the union. To do so would emasculate the Act. Aside from the difficulties of proving a negative fact, such as lack of union benefit, we do not think that Congress intended that union funds be the fair subject of embezzlement that is only vaguely premised on claimed union benefit. The conduct of these defendants cannot by any stretch of the imagination or by the use of sophisticated semantics be raised to the level of conduct required of fiduciaries, who at common law and in the ordinary context of that term are charged with a high degree of integrity and candor in their dealings with fiduciary funds, together with strict proscriptions against self-dealing.

■ Section 501(a) specifically says that a fiduciary responsibility includes expending union funds "in accordance with its constitution and bylaws." The overall purpose of the Act is to protect union property and funds, to provide full disclosure of financial affairs of the union, to establish self-help remedies for union members, and to impose criminal sanctions under § 501(c). The unauthorized expenditures of union funds with a fraudulent intent alone is exactly what the Act was attempting to reach. The purpose of the Act was "to insure that full information concerning the financial and internal administrative practices and procedures of labor organizations"[7] is available to union members. The exercise of power by union officials is not unfettered, but checked in the first instance by proper approval within its own ranks. The salary increases, which were not approved by the Executive Board, effectively were kept secret until the second reelection of defendants. Section 501(c) was designed to reach this exact type of occurrence. In upholding the constitutionality of § 501(c), the District Court in the Northern District of New York perceptively said:

> [T]he power of a labor organization to bargain collectively in matters affecting commerce, all of which is now regulated by statute, would be lessened by the misuse or abuse of its funds to the diminution of its power to bargain in matters affecting commerce.

United States v. Haverlick, 195 F.Supp. 331, 332 (N.D.N.Y.1961).

The Government appropriately points out that several "felonious taking" statutes do not require a showing of lack of benefit.[8] Section 501(c) should be interpreted similarly. We do not think that lack of union benefit need be established when the funds are *unauthorizedly* expended, because § 501(c)'s language of "embezzles, steals, or unlawfully and willfully abstracts or converts to his own use" only "means * * * 'not to

7. U.S.Code Cong. & Admin.News, Vol. 2, 86th Cong. 1st Sess. 1959, H.Rep.No.741, at 2430.

8. *E. g.*, 18 U.S.C. § 641, 18 U.S.C. § 645, 18 U.S.C. § 654, 18 U.S.C. § 655, 18 U.S.C. § 656, 18 U.S.C. § 657, 18 U.S.C. § 658, 18 U.S.C. § 659, 18 U.S.C. § 660, 18 U.S.C. § 661, and 15 U.S.C. § 80a–36.

the use of the entruster.'" United States v. Harrelson, 223 F.Supp. 869, 870 (E.D.Mich.1963).

We, therefore, hold that the essential elements of a § 501(c) crime in this case are: (1) fraudulent intent to deprive the union of its funds and (2) lack of authorization according to the union's constitution and bylaws.[9] Since we have held that the salary increases lacked the proper authorization, we do not reach the issue whether there is a § 501(c) violation when there has been a fraudulent intent and proper authorization, but a lack of benefit to the union. That situation presents a more troublesome issue: namely, does § 501(c) protect union funds by penalizing union officials when the members themselves have authorized union officials to expend union funds for non-union purposes? That issue must wait for another day.

In summary, fraudulent intent to deprive the union of its funds and a demonstrated lack of authorization, is sufficient for a prosecution under § 501(c). Lack of union benefit is not essential, but fraudulent intent must be proved; that is, the intent to deprive the union of its funds, not an intent to deprive the union of its funds that are not expended for union benefit. For example, if by mistake or accident a union official spends funds that are unauthorized, he is not liable under § 501(c).[10] To hold that "lack of union benefit" must be affirmatively proved by the prosecution and to allow a showing of union benefit to vitiate fraudulent intent in a case involving unauthorized expenditures would allow union officials to handily evade the broad fiduciary provisions of § 501(c) and the essential elements of a § 501(c) violation.

Defendants finally contend that proffered evidence, for example, on defendants' longer working hours, was "highly probative" on the matter of intent. According to our above discussion, a case involving lack of authorization under § 501(c) does not require a proof of lack of benefit to the union as an essential element, nor is a showing of benefit relevant to disproving fraudulent intent to deprive the union of its funds where the disbursement was unauthorized. The District Court properly refused to admit all such evidence on the grounds of irrelevancy.

Judgment of convictions affirmed.

---

9. *Accord,* United States v. Harrelson, 223 F. Supp. 869 (E.D.Mich.1963).

10. United States v. Bryant, 430 F.2d at 239, held that "willfulness is an essential element of the offense charged." Willfulness or criminal intent is commonly defined as an "act (or omission) * * * committed (or omitted) by defendant voluntarily, with knowledge that it was prohibited by law, and with the purpose of violating the law, and not by mistake, accident or in good faith." United States v. Rabb, 394 F.2d 230, 232 (3rd Cir. 1968), *quoting* Manual on Uniform Jury Instructions in Federal Criminal Cases of the United States District Court for the Northern District of Illinois, 33 F.R.D. 529, 553 (1963). We think, under the circumstances of this case, "good faith" cannot include, as a matter of law, spending union funds thinking it proper since the union would benefit from the expenditure. The fiduciary responsibility requires union officials to follow the proper procedures to authorize the expenditure of funds. A union official cannot be acting in "good faith" when not following his union's own procedures for authorizing expenditures. An elected union official must know the proper procedures for conducting his union's business.