**UNITED STATES of America,
Appellee,**

v.

**Edwin L. SULLIVAN, Defendant,
Appellant.**

**No. 74–1020.**

United States Court of Appeals,
First Circuit.

Argued May 6, 1974.

Decided June 4, 1974.

Peter Lawson Kennedy, Providence, R. I., with whom Adler, Pollock & Sheehan, Providence, R. I., was on brief, for defendant, appellant.

Lauren S. Kahn, Dept. of Justice, with whom Lincoln C. Almond, U. S. Atty., S. Michael Levin, Sp. Atty., Dept. of Justice, and Jerome M. Feit, Atty., Dept. of Justice, were on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

Defendant was convicted by a jury on two counts of unlawfully and willfully embezzling, stealing, abstracting and converting to his own use funds of the International Union of Operating Engineers, Local No. 57, of which he was an employee and minor official, in violation of 29 U.S.C. § 501(c) (1970). On appeal, defendant principally contends that § 501(c) could not have been properly applied to him, and further that, in any case, the evidence presented at trial did not support his conviction.

Defendant's initial claim is substantially without merit. Section 501(c) provides unambiguously that

> "*Any person* who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use . . . any of the moneys, funds, securities, property or other assets of a labor organization *of which he is an officer, or by which he is employed* [is guilty of a crime]." (Emphasis supplied).

At the time of the illicit activities alleged in the indictment, it is undisputed that defendant was a bonded employee of the local union's business office, being responsible, in part, for the preparation of checks and the acceptance and

receipt of monthly union dues. Moreover, during this period, defendant occupied the union office. of Guard, though the evidence revealed that this position was largely a ceremonial one.[1] Consequently, it seems evident that, upon consideration of defendant's status both as an employee and an officer, § 501(c) would *prima facie* apply to proscribe his participation in the unlawful conduct described therein. However, defendant contends that it was the Congressional intent to limit the full applicability of § 501(c) strictly to those particular union positions, described by 29 U.S.C. §§ 402(q), 501(a) (1970), which involve certain fiduciary obligations vis-a-vis the union.[2] Since defendant further contends that his functions within the union did not fall within the ambit of the fiduciary relationships defined in §§ 402(q) and 501(a), he therefore claims that § 501(c) has no applicability to him.

Preliminarily we note that even a liberal construction of this court's decision in Colella v. United States, 360 F.2d 792, 799, cert. denied, 385 U.S. 829, 87 S.Ct. 65, 17 L.Ed.2d 65 (1966), compels rejection of defendant's broad contention that

§§ 402(q) and 501(a) completely circumscribe § 501(c). While recognizing that "insofar as embezzlement is concerned, the existence of a fiduciary relationship is necessary" for conviction, our opinion in *Colella* emphasized that

> "[w]e are not dealing with an indictment charging simply embezzlement. Section 501(c) establishes 'a new Federal crime of embezzlement of any funds of a labor organization.' [citation omitted] The new crime can be accomplished in one of four ways: embezzling, stealing, unlawfully and willfully abstracting, and unlawfully and willfully converting." 360 F.2d at 799.

And, while suggesting that a § 501(a) or § 402(q) fiduciary relationship may arguably be an "essential element of the embezzlement means of committing the new federal crime,[3] *Colella* seems to make clear that such a relationship "is not essential to the three other means." *Id.* at 800 n.6. *See* Doyle v. United States, 318 F.2d 419 (8th Cir. 1963). Moreover, since, as we said in *Colella*, we "cannot imagine facts constituting embezzlement which would not also, absent a fiduciary relationship, make out

---

1. Pursuant to the Constitution of the International Union of Operating Engineers, the essential functions of the Guard consist of "tak[ing] ; charge of the doors at meetings to see that none but members in good standing and with the quarterly password enter, . . . furnish[ing] the General President [with] full and complete information on any subject within his control · or knowledge when requested and . . . perform[ing] such other duties as are customarily incident to his office or which from time to time may be delegated to him by the Local Union."

2. Section 501(a) states, *inter alia*, that "officers, agents, shop stewards and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group." These officials are vested with a statutory fiduciary responsibility to "hold [union] money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws." Section 501(a) is to some extent modified by ' § 402(q) so as to include within its terms

"elected officials and key administrative personnel, whether elected or appointed . . ., but . . . not . . . salaried, non- . supervisory professional staff, stenographic, and service personnel."

3. Though the existence of a "fiduciary relationship" was held to be a fundamental attribute of embezzlement, and though the *Colella* court noted that Congress had "spelled out [and refined] its own definition" of this relationship in §§ 402(q) and 501(a), it is by no means clear that the nature of the fiduciary obligations necessary to sustain a conviction for embezzlement under § 501(c) is strictly dependent upon §§ 402(q) and 501(a). The *Colella* court had no occasion to formally face the issue of whether a union functionary whose responsibilities do not fall precisely within the terms of §§ 402(q) and 501(a) could nevertheless be found to possess the requisite fiduciary relationship. Since resolution of this question is not directly necessary to our decision, we express no view upon it. *But cf.* Johnson v. Nelson, 325 F.2d 646 (8th Cir. 1963).

unlawful and willful abstraction or conversion," 360 F.2d at 800, the defendant in the instant case would not have been prejudiced by the fact that he conceivably could not have been convicted of traditional embezzlement, on the assumption that his union functions were not covered by §§ 402(q) and 501(a). "As far as the defendant is concerned, he has been placed in jeopardy with respect to all means of committing the offense by the proper manner of substitution in the indictment of the conjunctive 'and' for the statutory disjunctive 'or'. [citations omitted]." *Id.*

Thus, the impact of §§ 402(q) and 501(a) is at best limited to its effect upon the embezzlement provision of § 501(c), *but see* note 3 *supra*, and does not preclude a non-fiduciary union employee or officer from being subject to the remaining three aspects of that section.[4] Nonetheless, even if we were to accept, for the sake of argument, defendant's contention regarding the limiting role of §§ 402(q) and 501(a), we would still be forced to reject his argument.

In the first place, defendant is an elected officer of the union, and strictly speaking, no matter how ceremonial, § 501(a) invests in such officers the requisite fiduciary obligations necessary to sustain conviction under § 501(c), *see* note 2 *supra*, even were that section to be modified in the manner defendant suggests. Given the broad protective purposes underlying § 501, *see, e. g.,* United States v. Goad, 490 F.2d 1158, 1161–1162 (8th Cir. 1974) cert. denied, —— U.S. ——, 94 S.Ct. 3068, 41 L.Ed.2d —— (1974); Johnson v. Nelson, 325 F.2d 646, 650 (8th Cir. 1963), we think it entirely appropriate to construe the § 501(a) term "officer" in its most literal sense to include *all* union officers, no matter how minor their responsibilities. Certainly, it would violate the important judicial and social policy of clarity in the law to permit each potential § 501(c) defendant-officer to attempt to establish that his particular official functions were not comprehended within the "true" spirit of § 501(a). Moreover, to place a narrow construction on the term "officer" might, as in this case, necessitate excluding from § 501 coverage, an individual who, while not a high union official, did play, as the record reveals, a significant role in the administration of local union affairs.

But beyond defendant's arguably limited role as an officer pursuant to § 501(a), it is abundantly clear from the record that the defendant was a "key administrative" employee within the meaning of § 402(q) such that, on this account alone, he possessed a sufficient fiduciary obligation with respect to union funds and assets. Along with John White, Sr. and John White, Jr.,[5] defend-

---

4. Although defendant has cited numerous cases in which union officials who, having breached their fiduciary obligations, have been convicted under § 501(c), *see, e. g.* United States v. Ferrara, 451 F.2d 91 (2d Cir. 1971), cert. denied, 405 U.S. 1032, 92 S.Ct. 1291, 31 L.Ed.2d 489 (1972); United States v. Stubin, 446 F.2d 457 (3d Cir. 1971); United States v. Silverman, 430 F.2d 106 (2d Cir.), modified per curiam on other grounds, 439 F.2d 1198 (2d Cir. 1970), cert. denied, 402 U.S. 953, 91 S.Ct. 1619, 29 L. Ed.2d 123 (1971); United States v. Dibrizzi, 393 F.2d 642 (2d Cir. 1968), it is clear from a close reading of these cases that none of them stand for the broad proposition that a breach of fiduciary responsibility is either a necessary or essential element of conviction under § 501(c). "The terms used in [§ 501(c)] retain their common law meaning."

Woxburg v. United States, 329 F.2d 284, 290 (9th Cir.), cert. denied, 379 U.S. 823, 85 S. Ct. 45, 13 L.Ed.2d 33 (1964). Though common law embezzlement "carries with it the concept of a breach of fiduciary relationship," Colella v. United States, *supra*, 360 F.2d at 799, neither "stealing," "abstraction," nor "conversion" do. We see no reason grounded in policy or logic to extend to these terms a requirement of breach of fiduciary responsibility.

5. John White, Sr. was the Business Manager of Local 57. His son, John White, Jr. was the President of the Local and also served administratively as its Business Agent. Initially, both were indicted along with the defendant for violations of § 501(c). However, prior to trial, John White, Sr. became legally incompetent, and John White, Jr. died of natural causes.

ant was an important and influential member of the union's administrative staff. His responsibility for preparing checks, and for assisting in the collection of dues, constituted a significant role in the necessary performance of daily administrative functions.[6] In view of the obvious importance of defendant's role within Local 57, we will not now accept his plaintive claim that he was merely an insignificant clerical employee.

Thus, even under defendant's narrow interpretation of § 501(c), as requiring complete modification by §§ 402(q) and 501(a), his arguments provide little solace since both as an officer, pursuant to § 501(a), and as a key administrative employee, pursuant to § 402(q), defendant possessed the requisite fiduciary relationship with respect to his union necessary to permit application of § 501(c) to him.

■ We next turn to defendant's additional contention that the evidence adduced at trial will not support his conviction. Initially, we must note that the alleged wrongdoing on the part of defendant is somewhat unique to prosecutions under § 501(c). Whereas most criminal actions brought pursuant to that section involve "affirmative" misconduct—generally in the form of either intentional falsification of union expense vouchers, see, e. g., United States v. Dibrizzi, 393 F.2d 642 (2d Cir. 1968); Colella v. United States, supra, improper application of union funds by union management, see, e. g., United States v. Boyle, 157 U.S.App.D.C. 166, 482 F.2d 755, cert. denied, 414 U.S. 1076, 94 S.Ct. 593, 38 L.Ed.2d 483 (1973); United States v. Silverman, 430 F.2d 106 (2d Cir.), modified per curiam on other grounds, 439 F.2d 1198 (2d Cir. 1970), cert. denied, 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123 (1971), or illicit behavior approaching outright theft, see, e. g., United States v. Bryant, 430 F.2d 237

(8th Cir. 1970)—defendant here was essentially convicted of having "passively" received unauthorized salary increases and Christmas bonuses, knowing the same to have been unauthorized, and hence, illegal. However, as the Second Circuit has observed in a somewhat different context, "the reach of § 501(c) is not limited to union officers who engage in stealthy larcenies or devious embezzlements," United States v. Dibrizzi, supra, 393 F.2d at 645. Considering that § 501(c) was designed essentially to protect general union memberships from the corruption, however novel, of union officials and employees, see United States v. Harmon, 339 F.2d 354, 357–358 (6th Cir. 1964), cert. denied, 380 U.S. 944, 85 S.Ct. 1025, 13 L.Ed.2d 963 (1965), we do not believe that the proscriptions of that section should be read to operate solely against those who violate its terms in an active manner. In our view, the willing acceptance of misappropriated union funds by a recipient who knows that such funds are unauthorized and illegal will constitute a violation of § 501(c). See United States v. Goad, supra; cf. Woxberg v. United States, 329 F.2d 284, 285–293 (9th Cir.), cert. denied, 379 U.S. 823, 85 S.Ct. 45, 13 L.Ed.2d 33 (1964). Consequently, if upon examination of the record, it appears that there was sufficient evidence to permit the jury to conclude beyond a reasonable doubt that the defendant improperly received union funds (in the form of unauthorized raises and bonuses), and if the evidence further permits the valid inference that defendant knew his receipt of such funds was unlawful, we think that his conviction should be sustained. In this regard, it must be kept in mind that the elements of defendant's guilt may be supported entirely by circumstantial evidence, United States v. Stubin, 446 F.2d 457 (3d Cir. 1971), and that such evidence, including the fair inferences to be drawn therefrom, must be viewed in the light most

---

6. Additionally, defendant assisted John White, Sr. in determining the assignment of union members to the various jobsites and dealt on a regular business basis with both the union's employers and its accountants.

favorable to the government. United States v. Bryant, *supra*, 430 F.2d at 240.

■ In its case-in-chief, the government introduced documentary evidence which clearly established that, on or about July 15, 1968, defendant began receiving a $35 per week salary increase, which raised his previously existing pay scale from a weekly gross of $125 to one of $160.[7] Additionally, by comparable documentary and testimonial evidence, the government proved that in December of 1968, 1969 and 1970, the defendant received annual Christmas bonuses in amounts totalling $120, $125 and $200 respectively. The receipt of the salary increase and the bonuses constituted separate counts in the indictment upon which defendant was convicted. The government further introduced in evidence the amended Constitution of the International Union of Operating Engineers, by which Local 57 was governed. That document provided in part:

> "Any and all diversion of funds from a Local Union to or for the personal benefit of individual members by way of gifts, additional compensation for benefits or services otherwise paid for, retroactive compensation for services not previously authorized and similar situations *shall be illegal and void unless prior to the payment thereof such payment is specifically approved by the [Local's] membership and is approved in writing by the [International] General President.*"

Subsequent introduction of Local 57's minute book for the period covered by the indictment revealed that neither defendant's salary increase nor his Christmas bonuses were ever approved by the local's membership or by the General President, as was required by the union constitution.[8] Hence, such payments were, as a matter of unquestioned fact, "illegal and void." Moreover, since, as earlier indicated, the record disclosed that defendant was an officer of Local 57, as well as an influential employee of the union with some twenty years of service outstanding, we think it quite reasonable for the jury to have inferred that defendant was aware of the constitutional requirements for approval of his pay increase and bonuses. However, defendant contends that, notwithstanding these facts, there was no evidence admitted to show that he *actually knew* that his pay raise and bonus payments had not been properly authorized, and thus, that he lacked the requisite willfulness or guilty intent necessary to violate § 501(c). We disagree. Although there was no direct evidence of defendant's knowledge that the payments were unauthorized, we think that this was inferable from the government's other proof. In the first place, the union's minute book indicated that defendant attended virtually every meeting of the general membership during the period covered by the indictment, including all meetings immediately preceding his July 15, 1968, raise and his December 1968, 1969 and 1970 bonuses. Since the constitution required that the general membership approve of these payments, and since his attendance at those meetings must have made it plain to him that no such approval was ever given or even considered, it was clearly reasonable for the jury to conclude that defendant did, in fact, know that the payments were improper and illegal. Secondly, the evidence establishes a close working relationship between defendant and the Whites, who effectively ran the union. To the extent that the evidence also suggested that the Whites knew, or must have known, that these and other payments were illegal, it was permissible for the jury to infer that defendant possessed the same knowledge. Thus, in

---

7. This pay increase was made retroactive to January 1, 1968. Accordingly, on or about July 18, 1968, defendant also received a payment of $980 to cover the period from January 1, 1968, through July 15, 1968.

8. Apparently, the decision to appropriate union funds to increase defendant's salary and award him a Christmas bonus was made exclusively by John White, Sr., the Business Manager of Local 57, under whom defendant had long been employed.

our view, the evidence satisfactorily established that defendant, a union officer and employee, improperly received for his own benefit misappropriated and unauthorized union funds, knowing that his receipt of those funds was unlawful. Such evidence is, we believe, sufficient to sustain his conviction under § 501(c).

The remaining contentions raised by defendant have been carefully examined and have been found to be either clearly without merit, or at most, to constitute harmless error.

Affirmed.