**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joseph M. BANE, Sr., Defendant-Appellant.**

**No. 77-5333.**

United States Court of Appeals, Sixth Circuit.

Argued June 12, 1978.

Decided Aug. 25, 1978.

---

Kevin M. Sullivan, Isaac Schulz, Ford, Whitney, Crump & Schulz, Cleveland, Ohio, Mayer Morganroth, Southfield, Mich., John F. Chambers, Ripple, Chambers & Steiner, Detroit, Mich., for defendant-appellant.

James K. Robinson, U. S. Atty., Detroit, Mich., Patty Ellen Merkamp, App. Section, Crim. Div., T. George Gilinsky, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before PHILLIPS, Chief Circuit Judge, CELEBREZZE, Circuit Judge, and NEESE,* District Judge.

CELEBREZZE, Circuit Judge.

Appellant, Joseph M. Bane, Sr., was found guilty by a jury of misappropriating union funds in violation of 29 U.S.C. § 501(c).[1] The principal issues raised on

---

* The Honorable C. G. Neese, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1. 29 U.S.C. § 501(c):

Any person who embezzles, steals, or unlawfully and wilfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

appeal require this court to delineate the elements of the crime set forth in § 501(c) and to determine whether the district court's jury instructions properly reflected those elements. For reasons stated below, we affirm.

Appellant was president of Local 614 of the International Brotherhood of Teamsters in Pontiac, Michigan, at all times relevant to this cause.[2] In 1967, appellant requested for Local 614 a subsidy of $1,000 per month from the Teamsters international union. This subsidy was proposed to enable Local 614 to hire an experienced union organizer. James R. Hoffa, then Teamsters international president, approved the subsidy for six months, subject to renewal. Appellant used the subsidy to hire James R. Hoffa's brother, William Hoffa, as an organizer. The subsidy was renewed at appellant's request for subsequent six-month periods through 1974 on the approval of James R. Hoffa and his successor Frank E. Fitzsimmons.

The government demonstrated that during the period covered by the indictment (*viz.*, November 1970 through March 1974) William Hoffa was a "no-show" and did no organizing work for Local 614.[3] He continued to receive the international's subsidy payments from Local 614, however, throughout this period. Appellant regularly submitted forms to the international union showing that the subsidy was used to pay William Hoffa for organizing.

Appellant and William Hoffa were indicted in early 1976 for seven counts of mail fraud, one count of conspiracy and one count charging violation of § 501(c) both as principals and aiders and abettors. All counts arose from the same events—William Hoffa's "no-show" job. William Hoffa died of natural causes before trial. Appellant presented two somewhat inconsistent defenses at trial. First, he claimed that William Hoffa had become too ill to work for Local 614 and that during the period

covered by the indictment the payments made to William Hoffa were pursuant to an informal union sick pay policy. Second, appellant claimed that William Hoffa actually did work as an organizer for Local 614 during this time. As to the first defense, it was conceded that William Hoffa was ill, which illnesses eventually led to his death, but there was sufficient evidence for the jury to conclude either that he was not too ill to work or that, if too ill to work, the payments were not really made pursuant to any sick pay policy. As to the second defense, there was more than sufficient evidence for the jury to find that William Hoffa did not work as an organizer for Local 614.

The jury found appellant guilty of six of the seven counts of mail fraud and of violating § 501(c); appellant was acquitted of one count of mail fraud and conspiracy. Appellant moved for a judgment of acquittal after the jury verdict. The district court granted a new trial on the six mail fraud counts but denied the motion as to the § 501(c) violation, 433 F.Supp. 1286 (E.D.Mich.1977), so that only the § 501(c) count is presently before us.

Appellant's principal arguments on appeal are twofold. First, he claims the fact that the payments to William Hoffa were authorized and had at least a "colorable" benefit to the union insulates him from liability under § 501(c). Second, he argues that, even if authorization was not a valid defense, the district court should have instructed the jury that it had to find that there was no actual benefit to the union from the payments made to William Hoffa. Both of these arguments are without merit.

■ We have held that in enacting § 501 Congress imposed the broadest possible fiduciary duty upon union officers and employees. *United States v. Vitale*, 489 F.2d 1367, 1368 (6th Cir. 1974), citing *United States v. Silverman*, 430 F.2d 106, 113 (2d Cir.), *modified on other grounds* 439 F.2d

---

2. All of the facts contained in this paragraph are undisputed.

3. This was, of course, disputed by appellant but we must view the evidence most favorably to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

1198 (2d Cir. 1970), *cert. den.* 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123 (1971). *See also United States v. Nell,* 526 F.2d 1223, 1232 (5th Cir. 1976); *United States v. Goad,* 490 F.2d 1158, 1161–62 (8th Cir.), *cert. den.* 417 U.S. 945, 94 S.Ct. 3068, 41 L.Ed.2d 665 (1974). "The language in the statute, 'embezzles, steals, or unlawfully and willfully abstracts or converts . . . ,' would seem to cover almost every kind of a taking, whether by larceny, theft, embezzlement or conversion." *United States v. Harmon,* 339 F.2d 354, 357 (6th Cir. 1964), *cert. den.* 380 U.S. 944, 85 S.Ct. 1025, 13 L.Ed.2d 963 (1965). We have upheld a § 501(c) conviction on facts similar to those in the instant case, *United States v. Decker,* 304 F.2d 702 (6th Cir. 1962), and the conduct alleged by the government here clearly comes within the statute's coverage of "Any person who embezzles, . . . or unlawfully and willfully abstracts or converts to . . . the use of another, any of the moneys [or] funds . . . of a labor organization of which he is an officer . . . ." Section 501(c) was meant "to protect general union memberships from the corruption, however novel, of union officials and employees." *United States v. Sullivan,* 498 F.2d 146, 150 (1st Cir.), *cert. den.* 419 U.S. 993, 95 S.Ct. 303, 42 L.Ed.2d 265 (1974), *citing United States v. Harmon, supra,* 339 F.2d at 357–

58. Thus, appellant's § 501(c) conviction as either a principal or an aider and abettor must be upheld if the district court properly instructed the jury on the elements of a § 501(c) offense.

Section 501(c) cases are usually one of two types—one type involves unauthorized expenditures of union funds[4] and the other involves authorized expenditures.[5] This circuit has never had occasion to expressly delineate the elements of a § 501(c) offense in a case involving unauthorized expenditure of union funds.[6] *See United States v. Nell, supra,* 526 F.2d at 1232; *United States v. Goad, supra,* 490 F.2d at 1166. *See also United States v. Robinson,* 512 F.2d 491 (2d Cir.), *cert. den.* 423 U.S. 853, 96 S.Ct. 100, 46 L.Ed.2d 78 (1975); *United States v. Silverman, supra,* 430 F.2d at 113–17 (Moore, J., dissenting in part). Nor do we have occasion to do so here since the district court instructed the jury that the payments to William Hoffa were authorized by both the international and local union.[7] We thus assume that the expenditures were authorized and analyze the case on that basis.

In a § 501(c) case in which the expenditure of union funds was authorized the government must prove two distinct but interrelated elements.[8] First, it must

---

4. This opinion will use "expenditure" to include all types of (mis)appropriations of union funds, with "funds" being used to include "moneys, funds, securities, property, or other assets."

5. *Cf. United States v. Boyle,* 157 U.S.App.D.C. 166, 175, 482 F.2d 755, 764, *cert. den.* 414 U.S. 1076, 94 S.Ct. 593, 38 L.Ed.2d 483 (1973), in which the court upheld a § 501(c) conviction because the ultimate use of the union funds was illegal irrespective of any issue concerning authorization.

    *See generally Annot.,* 15 A.L.R.3d 939, § 10.

6. *United States v. Harmon,* 339 F.2d 354 (6th Cir. 1964), and *United States v. Decker,* 304 F.2d 702 (6th Cir. 1962), both involved unauthorized expenditures of union funds but neither case required the court to spell out the § 501(c) elements in that context. Instead, the court only answered the defendants' contentions that the evidence was insufficient to support the convictions.

7. We agree with the government that the district court could have properly instructed the jury that a guilty verdict was warranted if the funds were not being expended as authorized, even though an expenditure was authorized. The failure to so instruct, however, worked in appellant's favor since it removed from the jury's consideration one possible theory supporting guilt.

    The simple fact that authorization was not an issue in this case demonstrates the flaw in appellant's argument that authorization constitutes a complete defense to a § 501(c) charge. As given to the jury, authorization or lack thereof was totally irrelevant since authorization was taken as assumed.

8. The same rules would apparently apply if the defendant had a good faith belief that the expenditure was authorized, *Goad, supra,* 490 F.2d at 1166, or that the union would authorize it, *United States v. Santiago,* 528 F.2d 1130, 1133–34 (2d Cir.), *cert. den.* 425 U.S. 972, 96 S.Ct. 2169, 48 L.Ed.2d 795 (1976), and *United States v. Ottley,* 509 F.2d 667, 671 (2d Cir. 1975).

prove that the defendant had a fraudulent intent to deprive the union of its funds and, second, that the defendant lacked a good faith belief that the expenditure was for the legitimate benefit of the union.[9] *United States v. Santiago, supra,* 528 F.2d at 1133–34; *United States v. Ottley, supra,* 509 F.2d at 671–72; *United States v. Dibrizzi,* 393 F.2d 642, 644–45 (2d Cir. 1968); *Colella v. United States,* 360 F.2d 792, 798 (1st Cir.), *cert. den.* 385 U.S. 829, 87 S.Ct. 65, 17 L.Ed.2d 65 (1966); *Dolye v. United States,* 318 F.2d 419, 422 (8th Cir. 1963).

▮ Whether or not the expenditure did, in fact, legitimately benefit the union is relevant both to the defendant's good faith belief therein and his fraudulent intent.

*Ottley, supra,* 509 F.2d at 671. An actual union benefit would tend to make good faith belief therein more likely and fraudulent intent less likely, and vice versa. But, contrary to appellant's argument, it is not necessary for the government to prove that the expenditure did not actually benefit the union.[10] To require such proof could absolve a defendant of liability when an otherwise fraudulent appropriation of funds fortuitously had some beneficial effect upon the union. Such a requirement would also be inconsistent with the strict fiduciary duty imposed upon union officials by § 501.

▮ We have examined the district court's jury instructions[11] in light of the

9. The government must, of course, prove in every § 501(c) case that it involves "[1] the moneys, funds, securities, property, or other assets [2] of a labor organization [3] of which [the defendant] is an officer, or by which he is employed." These elements were stipulated in this case.

10. *United States v. Vitale, supra,* 489 F.2d at 1369, did not hold that the government must prove an actual absence of benefit to the union in a § 501(c) case involving an authorized expenditure. While the court did note language which could be so read, that passage was a quotation from the portion of Judge Moore's opinion in *Silverman, supra,* 430 F.2d at 113–17, which was a dissenting opinion; the second circuit's views have been more precisely set forth in *Santiago* and *Ottley.* The holding in *Vitale* was simply that there was sufficient evidence to support the guilty verdict. There was no conceivable benefit to the union from the misappropriation of funds involved there and the court had no need to address the issue of benefit to the union or good faith belief therein.

It should be noted that both appellant's brief and reply brief filed in this court pretermit any mention of *Vitale* and the only other opinions of this court interpreting § 501(c), *Harmon, supra,* and *Decker, supra.*

11. The district court instructed the jury, in part, as follows:

To determine whether these funds of the Union which were paid to William Hoffa were embezzled, you must ask yourselves if the defendant had a good faith belief that the union funds which were paid to William Hoffa were being used for the benefit of the union. Thus, the government must prove beyond a reasonable doubt that the defendant did not have a good faith belief that the union funds which were paid to William Hoffa were for the benefit of the union. If you

are not convinced beyond a reasonable doubt that the defendant did not have a good faith belief that the funds paid to William Hoffa were for the benefit of the union, then an embezzlement would not have occurred within the meaning of the law.

On the other hand, if you are convinced beyond a reasonable doubt that the defendant did not have a good faith belief that the funds paid to William Hoffa were for the benefit of the union, that the defendant acted knowingly and wilfully, then an embezzlement would have occurred within the meaning of the law.

I would now like to define for you what I mean by 'good faith belief.' A good faith belief, as commonly used, means a belief or state of mind denoting honesty of purpose, freedom from intention to defraud. Generally speaking, it means being faithful to one's duty or obligation.

I also want to define the term "Union benefit" or "Benefit to the Union." A benefit to the Union is something that furthers the interests of the members and the institution of a labor union. A benefit to the Union occurs when some legitimate purpose of the Union is advanced. A benefit to the Union does not occur if the benefit that occurred only inured to an individual. With regard to expenditures that are or are not Union benefits, some expenditures are clearly in furtherance of the interests of the Union. While others are so clearly not in the furtherance of the Union purpose that such a claim is scarcely credible. Others may depend on the facts of a particular case.

In determining whether there was or was not a Union benefit in this case, you should examine the purposes and results of the payments and use your best judgment to decide if there reasonably was any gain for the members of Local 614 or for the International

above legal standards. We believe that the instructions properly focused the jury's attention on the need for the government to prove that appellant did not have a good faith belief that the subsidy payments to William Hoffa were for the legitimate benefit of the union. The instructions, taken as a whole, also gave the jury adequate opportunity to consider actual benefit to the union from this expenditure insofar as that related to appellant's good faith belief therein and his concomitant fraudulent intent.

All of the other issues raised by appellant have been considered and found to be without merit.

The judgment of the district court is affirmed.

Celebrezze, Circuit Judge, filed an opinion concurring in the result.

Brotherhood of Teamsters in the subsidy payments made to William Hoffa as alleged. The district court's instructions on fraudulent intent were found elsewhere in the charge and are not objected to on appeal.

We note that the district court focused on the word "embezzlement" and omitted mention of the other statutory terms, "abstracts" and "converts." The latter terms were probably more appropriate on the facts of this case but we can see no prejudice to appellant from their omission.

We do not mean to suggest that the above quoted jury instructions should be used as a model in future trials since further refinement would be appropriate in light of this opinion. We merely uphold the quoted instructions as adequate on the facts of this case.