**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Frank C. MAROLDA,**
**Defendant-Appellant.**

No. 78–3752.

United States Court of Appeals,
Ninth Circuit.

March 26, 1980.

Rehearing Denied June 23, 1980.

Allen J. Ruby, Morgan, Ruby, Teter, Schofield, Franich, Bourchier & Fredkin, San Jose, Cal., for defendant-appellant.

Gerald J. Hinckley, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before TRASK and GOODWIN, Circuit Judges, and LARSON *, District Judge.

* The Honorable Earl R. Larson, Senior United States District Judge for the District of Minnesota, sitting by designation.

GOODWIN, Circuit Judge:

Frank C. Marolda appeals his conviction for embezzling from a labor union, 29 U.S.C. § 501(c). The principal points on appeal concern the instructions to the jury. Because of error in the instructions, the judgment is reversed.

The International Union of Hotel and Restaurant Employees decided, for economic reasons, to merge two of its locals, and on October 1, 1975, the newly merged Local 19 was formed. The International installed Marolda as Local 19's chief executive officer. At its first meeting, the Executive Board of the new local adopted an automobile expense allowance which provided $300 (raised a year later to $400) a month to officers and staff of the local who used their own cars for union business. The Board apparently also agreed at this meeting to terminate the practice of charging purchases on oil company credit cards that had been issued for union business. Marolda, however, continued to use his oil company credit card while also receiving the monthly auto allowance. In October 1977, when one of the Board members complained of Marolda's continued use of a credit card, Marolda surrendered the card. The indictment and conviction for embezzling were based on Marolda's double billing by using the credit card for about two years.

On May 3, 1978, the Executive Board voted to approve all expenditures made to pay oil company bills during the period when Marolda had been using the credit card. Two weeks after the Board action, Marolda appeared with his attorneys in the office of the government prosecutor and discussed the possibility of an indictment for embezzlement and mail fraud. Three days later, the Executive Board of Local 19 passed a resolution specifically ratifying Marolda's use of the credit card. The following month the general membership of Local 19 also approved this resolution.

Congress in 29 U.S.C. § 501(c) made embezzling from a labor union a federal criminal offense. That section applies to "[a]ny person who embezzles, steals or unlawfully and willfully abstracts or converts to his own use * * * any of the moneys * * * of a labor organization of which he is an officer * * * ."

The district court defined the essential elements of this offense in its instructions to the jury.[1] Both sides agree that, under the court's instruction, Marolda could be convicted if the government established that he had used union funds with the specific intent to defraud the union and if he then had no good faith belief that his use of the funds benefited the union. The parties disagree, however, about whether the government should also have been required to prove absence of actual and valid authorization and absence of actual union benefit as elements under the statute. If not statutory elements, Marolda contends that the wording of the indictment[2] required their proof in this case.

---

1. The relevant portion of the court's instructions to the jury reads as follows:

"Now the elements of the offense charged in count 1 of the indictment are as follows:
1, that Local 19 * * * is a labor organization and engaged in commerce.
2, that the defendant was at the time of the act alleged in count 1 an officer of that labor organization.
3, that the monies * * * which are the subject of count 1, were at the time of the conduct alleged the monies * * * of Local 19, or [sic] that the defendant wilfully and unlawfully embezzled, stole or abstracted or converted to his own use the monies and funds of that labor organization [Although the transcript reads as cited, we be-

lieve that the "or" in the middle of the third element was actually stated phonetically as "4".], and
5, that the defendant acted with the intent to defraud."

2. Count one of the indictment reads in pertinent part:

"The Grand Jury Charges: THAT * * * FRANK C. MAROLDA * * * unlawfully and willfully did embezzle, steal, abstract and convert to his own use the sum of $2,500 of the moneys and funds of said labor organization, by drawing and issuing, and causing to be drawn, issued and paid checks * * * without proper authorization and without benefit to said Local."

The Ninth Circuit has not previously addressed the question of the elements under § 501(c),[3] and there is little agreement elsewhere on it. Of the six circuits that have considered the issue, three have defined § 501(c) in a way consistent with the district court's instruction. *United States v. Bane*, 583 F.2d 832 (6th Cir. 1978). *cert. denied*, 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979);[4] *United States v. Santiago*, 528 F.2d 1130 (2d Cir.), *cert. denied*, 425 U.S. 972, 96 S.Ct. 2169, 48 L.Ed.2d 795 (1976);[5] *United States v. Boyle*, 157 U.S. App.D.C. 166, 482 F.2d 755 (D.C.Cir.), *cert. denied*, 414 U.S. 1076, 94 S.Ct. 593, 38 L.Ed.2d 483 (1973).[6] Two other circuits suggested that a § 501(c) conviction requires, in addition to fraudulent intent, proof that the expenditure was not validly authorized by the union. *United States v. Nell*, 526 F.2d 1223, 1232 (5th Cir. 1976); *United States v. Goad*, 490 F.2d 1158 (8th Cir.), *cert. denied*, 417 U.S. 945, 94 S.Ct. 3068, 41 L.Ed.2d 665 (1974).[7] The First

---

**3.** In *United States v. Johnson*, 596 F.2d 842, 847 (9th Cir. 1979), the defendant contended that there was insufficient evidence to convict him of embezzlement of union funds under § 501(c) because of lack of evidence of nonauthorization. This court held that although the union's president testified that the expenditures had been authorized, the government's evidence showed that the severance pay greatly exceeded what was authorized, and that the restaurant expenses for which the defendant was reimbursed were never actually incurred. Whether the government *had* to prove nonauthorization was not presented as an issue in the case.

**4.** *Bane* upheld a § 501(c) conviction even though the court assumed that the expenditures had been authorized by the union. The Sixth Circuit adopted the position that the statute could be violated despite actual authorization or union benefit. The court expressed the view that the strict fiduciary duty imposed upon union officials by § 501 justified holding union officials liable upon a showing of fraudulent intent and lack of good faith belief as to authorization and benefit. *United States v. Bane*, 583 F.2d at 836. While recognizing that evidence of actual union benefit, for example, would be relevant to the defendant's intent and belief, the court felt that some fortuitous beneficial effect to the union ought not absolve from criminal liability the union officer who acted fraudulently and without subjective belief that the union would in fact benefit from the expenditure. *Id.*

**5.** In *Santiago*, the Second Circuit expressly declined to consider the possibility of subsequent union ratification of the expenditures for the defendant's extensive travel as a defense under § 501(c). 528 F.2d at 1133–34. The court affirmed the conviction on a finding of fraud and lack of good faith belief.

In an earlier case the Second Circuit seemed to have taken the view that a finding of nonauthorization was required for a § 501(c) conviction. *United States v. Silverman*, 430 F.2d 106, 117–18 (2d Cir.), *modified on other grounds*, 439 F.2d 1198 (2d Cir. 1970), *cert. denied*, 402

U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123 (1971). *See also, United States v. Ottley*, 509 F.2d 667, 671 and n.6 (2d Cir. 1975) (one could read footnote language to mean that actual benefit to the union would defeat a § 501(c) charge; *Ottley*'s holding, however, was that a good faith belief in, although there were no actual, authorization and union benefit would entitle the defendant to an acquittal).

In a still earlier opinion, the Second Circuit held:

> "Even if appellant may have established that his expenses were, as he claims, authorized and adopted by the union, such does not absolve him of his crimes; the reach of § 501(c) is not limited to union officers who engage in stealthy larcenies or devious embezzlements but extends to an officer who 'unlawfully and wilfully abstracts or converts to his own use' the funds of a labor organization. When one sends the union a voucher known to an improper one, and then receives payment of the voucher, the crime is completed." *United States v. Dibrizzi*, 393 F.2d 642, 645 (2d Cir. 1968).

While *Silverman* has never been expressly rejected by the Circuit, the holding of *Santiago* and the recent citation of the *Dibrizzi* language in *United States v. Capanegro*, 576 F.2d 973, 979–80 (2d Cir.), *cert. denied*, 439 U.S. 928, 99 S.Ct. 312, 58 L.Ed.2d 320 (1978), strongly suggest that a finding of nonauthorization is not required for a § 501(c) conviction in the Second Circuit.

**6.** The holding in *Boyle* was a narrow one: Where the use to which money was converted could not have been lawful—here, illegal federal campaign contributions—union authorization of or benefit from the expenditure cannot absolve from § 501(c) liability the union officer who knowingly authorized the transfer.

**7.** It should be noted that in both of these cases the main question before the court was whether absence of actual union benefit was an element of the offense in addition to absence of authorization. Both courts affirmed § 501(c) convictions on the ground that fraudulent in-

Circuit has held that, although an expenditure was not authorized, a showing of actual benefit to the union would result in an acquittal under § 501(c). *Colella v. United States,* 360 F.2d 792, 804 (1st Cir.), *cert. denied,* 385 U.S. 829, 87 S.Ct. 65, 17 L.Ed.2d 65 (1966).[8]

We need not resolve the question of the statutory elements here because a prejudicial variance between the offense as charged in the indictment and that defined by the court's instructions requires reversal. Should the government choose to retry Marolda, it will have to prove the offense as charged in the indictment.

█ As *United States v. Bane, supra,* illustrates, the finding that a union official acted in bad faith does not necessarily include the finding that the expenditure was not authorized or that it yielded no benefit

to the union. Whether Marolda's use of the credit card was properly authorized was an issue written into the indictment and hotly contested at trial. Under the district court's instructions, however, there is no way of knowing what the jury decided on this issue. By the charge to the jury, the court first dwelt upon the language in the indictment concerning authorization at some length and then later treated it as surplusage, effectively telling the jury to disregard it.[9]

█ The indictment specifically charged that Marolda had acted "without proper authorization and without benefit to said Local." That language may well have had an antecedent bearing on the grand jury's decision to indict, whether or not a legally sufficient allegation could have been made without it. *See Ex parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887).[10] That is, the

tent and nonauthorization were all the government needed to prove. The court in *Goad,* 490 F.2d at 1166, specifically reserved the question whether a union officer could be convicted upon proof that, although authorized, expenditures had no union benefit.

**8.** Again, this case affirmed a conviction under § 501(c). Although there is little discussion of the elements of the offense, the First Circuit does say, without criticism, that under the district court's charge, "if the jury felt that the defendant had spent for a union purpose, albeit unauthorized, they were to find him not guilty." *Colella,* 360 F.2d at 804.

**9.** The jury instructions read, in pertinent part:
"If you conclude that the expenditures were either actually authorized or would have been approved or ratified if known to the union, then you must proceed to determine whether the government has shown that the defendant lacked a good faith belief that the expenditures were made for the benefit of the union.

"If you are convinced beyond a reasonable doubt that the defendant did not have a good faith belief that the expenditure was for the benefit of the union, then you may find the defendant guilty, provided that you further *determine* that he acted wilfully and with the intent to defraud * * *.

  *   *   *   *   *

"If you should find beyond a reasonable doubt that the expenditure in question was not authorized and that it would not have been authorized if submitted to the union, then you must proceed to consider two separate questions concerning the defendant's

state of mind when the expenditure was made.

"First, you must determine whether the defendant in making the expenditure had a good faith belief that the expenditure was authorized or would be authorized by the union.

"Second, you must determine whether the defendant in making the expenditure had a good faith belief that the expenditure was for the benefit of the union.

"If the defendant in good faith believed that the expenditure was or would be authorized and that it was for the benefit of the union, then an embezzlement did not occur within the meaning of the law.

"If after consideration of all the evidence you conclude beyond a reasonable doubt that the defendant did not have a good faith belief that the expenditures were or would be authorized and that they were for the benefit of the union, then you may find the defendant guilty, provided you further conclude that he acted with fraudulent intent as that term is defined in these instructions.

"If on the other hand you are left with a reasonable doubt concerning the defendant's lack of good faith belief in these matters, you must then find him not guilty."

**10.** In *Bain,* an officer of a banking association was charged with making a false report with intent to deceive the Comptroller of the Currency as well as the agent appointed by the Comptroller to examine the association's affairs. The trial court eliminated reference to the Comptroller. The Supreme Court reversed the conviction even though the remainder of the

grand jury may have indicted Marolda only because the United States attorney represented to it that the credit card expenditures were not actually authorized by or of benefit to the union. "[T]he settled rule in the federal courts [is] that an indictment may not be amended except by resubmission to the grand jury, unless the charge is merely a matter of form." *Russell v. United States*, 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1962). The change effectuated here by the jury instruction was no mere matter of form.

This case, therefore, differs from those which hold that an effectively deleted portion of an indictment was surplusage. For example, in *United States v. Cirami*, 510 F.2d 69 (2d Cir.), *cert. denied*, 421 U.S. 964, 95 S.Ct. 1952, 44 L.Ed.2d 451 (1975), whether a corporation or its principal officers were liable for the taxes in the prosecution of the latter for attempted tax evasion was irrelevant to the charge, although the liability had been incorrectly stated in the indictment. The court correctly concluded that there was no " * * * substantial likelihood that the grand jury would have failed to indict the appellants for their actions in wilfully filing false returns even if the grand jurors had understood that the taxes were due from the corporation and not from the appellants." 510 F.2d at 73. Cases in this circuit, too, have held that immaterial changes in indictments caused by the wording of jury instructions were in effect the removal of surplusage. *See, e. g., United States v. Anderson*, 532 F.2d 1218, 1228 (9th Cir.), *cert. denied*, 429 U.S. 839, 97 S.Ct. 111, 50 L.Ed.2d 107 (1976); *United States v. Dawson*, 516 F.2d 796, 799–804 (9th Cir.), *cert. denied*, 423 U.S. 855, 96 S.Ct. 104, 46 L.Ed.2d 80 (1975); *United States v. Edwards*, 465 F.2d 943,

949–50 (9th Cir. 1972). It was held in these cases that the defendants had not been deprived of their Fifth Amendment right to be tried on a grand jury indictment.

However, this circuit has also held indictment language to be "mere" surplusage in situations in which the likelihood of a grand jury indictment with that language omitted was by no means a foregone conclusion. *See, e. g., United States v. Kartman*, 417 F.2d 893, 894–5 (9th Cir. 1969) (conviction reversed on other grounds) (defendant's knowledge of official status of victim of forcible assault held surplusage since such knowledge was not element of crime); *United States v. Harvey*, 428 F.2d 782, 784–85 (9th Cir. 1970) ("wilfully" and "feloniously" held surplusage in indictment for assault with deadly weapon or force).

Nevertheless, the excluded language in this case cannot be similarly characterized as a nonprejudicial striking of surplusage. Marolda points out that the court's treatment of the authorization and benefit issues at the conclusion of all the evidence severely prejudiced his defense, a major portion of which had been devoted to showing that his expenditures were properly authorized and served a union purpose.

It should be noted that the question of prejudice was addressed in nearly all the cited cases in which surplusage was subsequently deleted from an indictment. For example, in *United States v. Harvey, supra* at 785, the court found that the defendant was not prejudiced by the omission of "wilfully" from the indictment. Even though his whole defense at trial was structured on rebuttal of the stringent intent requirement of the indictment, by evidence of intoxication at the time of the shooting, the court concluded that he was not prejudiced be-

---

indictment adequately stated an offense. The court was evidently concerned that the grand jury may have indicted primarily because of the defendant's attempt to deceive the Comptroller himself. The *Bain* rule was reaffirmed by the Supreme Court in *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) and *Russell v. United States*, 369 U.S. 749, 770–71, 82 S.Ct. 1038, 1050–51, 8 L.Ed.2d 240 (1962).

Recently, this circuit held that the failure of an indictment to charge essential elements of the offense could not be cured by the trial court through jury instructions *United States v. Keith*, 605 F.2d 462 (9th Cir. 1979). Although the situation there was the converse of that here, our reaffirmation in *Keith* of the importance of the constitutional protection afforded by a grand jury indictment is equally applicable in this context. *Id.* at 464.

cause he had no other defense available to him anyway. Here, however, Marolda might well have chosen to testify as to his subjective state of mind, rather than to rely on evidence of union authorization and benefit, if he had known that the court would not allow those issues to go to the jury as defenses to the charge.

This case is also wholly unlike *United States v. Kartman, supra,* where the court's examination of the record revealed that the defendant was aware of the government's statutory position—that it need not prove knowledge of the victim's official status—from the beginning of the trial. In *Kartman,* only the emphasis, but not the substance of the defense presentation may have been affected by the indictment. In contrast, union authorization was a contested issue throughout the trial here, with the government telling the jury in the opening statement that it would prove absence of authorization. Marolda remained unaware until the end of the trial that nonauthorization would be virtually removed from the case. And, as already mentioned, the substance of the defense presentation was no doubt affected by the court's language making authorization virtually irrelevant.

The prejudice in this case is akin to that found in *United States v. Behenna,* 552 F.2d 573 (4th Cir. 1977). The defendant there was convicted of knowingly making a particularized false statement in connection with his purchase of a gun in South Carolina. It was clear that he had lied about his residence *address,* but the indictment did not charge him with that falsehood, even though that charge would have been sufficient to establish a violation under the statute. The indictment, rather, charged him with making a false statement as to his *state* of residence, and his primary defense had been geared to establishing that he

reasonably and honestly believed he was a South Carolina resident at the time of purchase. The court held that the jury instructions which excluded his asserted belief as a defense to the specific charge in the indictment constituted prejudicial error.

The error created in this case may have been due in part to the confusion existing in the circuits as to the elements of the offense under 29 U.S.C. § 501(c). However, having charged Marolda as it did in the indictment, the government was bound to show that the expenditures were neither properly authorized by nor beneficial to the union.

Revised.

LARSON, Senior District Judge (concurring):

With a degree of reluctance I join with the majority in finding that the defendant was prejudiced by the variance between the indictment and the jury instructions. My hesitance stems from doubts that the defendant has suffered any real prejudice, and from a belief that defendant contributed to this problem. His attorney submitted requested jury instructions which were largely adopted by the trial court. Despite these misgivings, I find the majority opinion persuasive.

What may be equally important here is for the Court to clearly establish the elements of this crime to prevent future confusion. Careful review of the legislative history [1] of § 501(c) convinces me that neither lack of authorization nor lack of union benefit are necessary elements of this crime. Congress was merely transmuting common law theft crimes involving union funds and committed by union officers or employees into Federal crimes. The purpose in doing this was to provide an additional forum for prosecution of these crimes.

---

1. *See* Hearings on Bills Pertaining to Labor-Management Reform Before Subcomm. on Labor of Senate Comm. on Labor & Public Welfare, 86th Cong., 1st Sess. (1959); Hearings on H.R. 3540, 3302, 4473, 4474 Before Joint Subcomm. of the House Comm. on Education & Labor, Pts. 1–5, 86th Cong., 1st Sess. (1959); S.Rep.No. 187, 86th Cong., 1st Sess. (1959);

H.Rep.No. 741, 86th Cong., 1st Sess. (1959); Conference Report on S. 1555 (Sen.Doc. No. 51), 86th Cong., 1st Sess. (1959); Senate Debate, 105 Cong.Rec. 5974, 6088, 6228, 6280, 6389, 6461, 6515, 6638, 6715 (1959); House Debate, 105 Cong.Rec. 15512, 15660, 15824, 15882 (1959).

I am not certain why courts began to add new elements to § 501(c) crimes. There is some suggestion that this stemmed from the language of § 501(a), which places fiduciary duties on union officers, and requires that they hold union funds solely for union benefit and expend those funds only as authorized by the union. The legislative history clearly shows that no linkage was intended between the § 501(a) fiduciary duties and the § 501(c) crimes. In fact, the two provisions were added to the bill at different times. My understanding is that Congress' intent was to create a crime with the same elements as common law crimes. The courts should not add new elements not desired by Congress.

One of the elements of any of the theft crimes enumerated in § 501(c) will be criminal intent. The government must prove beyond a reasonable doubt that the defendant possessed the requisite intent. Lack of authorization or lack of union benefit could be relevant evidence on this issue, but the government should not be forced to prove them as elements of the crime. Similarly, the presence or absence of good faith on the part of the defendant is merely another factor in determining intent. A defendant could not simultaneously possess both criminal intent and a good faith belief that he was properly spending the union's money. A judge could properly instruct a jury that all these factors may be considered in deciding whether the government has established criminal intent beyond a reasonable doubt, but the prosecution should not bear the burden of establishing each factor as an element of the crime.

This view of the elements of a § 501(c) crime is supported not only by the legislative history, but also by sound policy. The whole purpose of this reform legislation was to correct abuse of position and power by union officials. The statute was intended to be applied broadly to provide maximum protection for union members and the general public. Union officials should not be allowed to escape conviction by arranging for authorization of their misuse of funds. Nor should the fact that a wrongful expenditure of funds incidentally benefits the union excuse an official's wrongful acts. The possibility for abuse is so great that only a very broad criminal statute can provide an effective deterrent and mechanism for punishment.