**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

———————

No. 97-2119

———————

International Association of  * Machinists
and Aerospace Workers, AFL-CIO;  *
Claudia Davey; John Desmond;  * Robert
Dionne; Kit Furness; Tamara  * Pierro;
Pamela Pinard; Jill Radel; Nina  *
Resenhouse;                                     *
                                                       *
      Appellants;                       *
                                                       * Appeal   from   the   United
States
       v.                                    * District Court for the
                                                       * Eastern    District    of
Missouri.
Barry Schimmel, Flip Becker,  * Terry
Fitzgerald, Jerry Giustiniani,  * Sheila
McCann, in their official capacities as
officers of the Independent  * Federation
of Flight Attendants and in  * their
individual capacities;                  *
                                                       *
      Appellees.                           *

———————

Submitted:  September 10, 1997

                                                     Filed:
November 10, 1997

———————

Before BEAM, FLOYD R. GIBSON,   and HEANEY, Circuit
Judges.

———————

HEANEY, Circuit Judge.

International Association of Machinists and Aerospace Workers (IAM) and eight flight attendants (individual appellants) for Trans World Airlines (TWA) appeal from the district court's denial of their motion for a preliminary injunction against the Independent Federation of Flight Attendants (IFFA), an unincorporated labor organization. Because IFFA has no representational responsibilities on behalf of the TWA flight attendants, we conclude that IFFA is not entitled to retain funds that reflect union dues paid by the flight attendants beyond those necessary to conclude representation. Therefore, individual appellants are entitled to a preliminary injunction. We reverse.

I.

Prior to March 6, 1997, IFFA was the official collective bargaining representative of the TWA flight attendants. These attendants were the only group IFFA represented and, consequently, IFFA's sole source of union dues. Additionally, IFFA's only collective bargaining agreement was with TWA. In the fall of 1996, IAM submitted a bid to merge with IFFA. Sherry Cooper, president of IFFA, supported the merger but IFFA's executive board rejected the bid. Subsequently IAM sought to become the TWA flight attendants' sole collective bargaining representative. With the help of Cooper, IAM acquired IFFA's membership lists and mailed materials urging the flight attendants to execute authorization cards that would allow IAM to seek a representation election with the National Mediation Board (NMB). After receiving sufficient authorization cards,

2

the NMB scheduled a union representation election to be held on February 27, 1997.

On February 4, 1997, Sherry Cooper resigned the IFFA presidency while charges of dual unionism were pending against her for her support of IAM. Cooper's successor as IFFA president, Rocky Miller, distributed a letter also advocating IAM as the new collective bargaining representative, after which he also faced charges of dual

unionism. The IFFA executive board opposed IAM's succession as the TWA flight attendants' collective bargaining representative.

Shortly before the election on February 21, 1997, the individual appellants sent a letter to IFFA.[1] Pursuant to the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 501(b),[2] they demanded "an immediate accounting of the current funds and assets of IFFA" and "that no further funds or assets be expended and that they be held in trust for the benefit of TWA flight attendants pending the outcome of the representation election."[3] (Jt. App. at 344.) Also on February 21st, IAM sent a letter requesting that IFFA safeguard its assets as well as "cooperate in an orderly audit and transfer of all assets and records to [IAM]" after the election. (Jt. App. at 345.)

On February 25, 1997, IFFA responded by letter requesting a clarification of who the individual appellants believed had violated their fiduciary duties.

---

[1]One of the eight individual appellants, Kit Furness, was not a signatory to the February 21, 1997 letter but made identical demands on IFFA in a letter dated March 1, 1997.

[2]Prior to bringing suit under § 501 of the LMRDA, there must first be an allegation that a union official has breached a fiduciary duty owed to the labor organization or its members. Second, a member of the labor organization must request that the labor organization or its governing board remedy the breach by taking such action as "secur[ing] an accounting or other appropriate relief." 29 U.S.C. § 501(b).

[3]The letter went on to state that "[e]ach officer shall be individually liable for damages, attorney's fees and other appropriate relief should you violate your fiduciary duty in failing to give us an accounting or by wasting our funds." (Jt. App. at 344.)

4

IFFA also stated that without information about a specific violation, IFFA would not have sufficient information to process individual appellants' request for an accounting. On the same day, IFFA's executive board awarded themselves unused vacation time and

expressed their intention to fund a campaign to organize flight attendants at Continental Airlines.

On February 27, 1997, the flight attendants elected IAM as their collective bargaining representative.[4]  The day after the election, IFFA's secretary-treasurer, Barry Schimmel, transferred at least $700,000 of IFFA funds into new accounts; and IFFA filed a lawsuit to prevent appellants from obtaining an accounting of IFFA's funds and to enjoin them from filing suit in this case.

On March 3, 1997, appellants filed their own action for declaratory judgment and injunctive relief against IFFA.  Appellants argued that, because IFFA had no collective bargaining agreement, no members, and no duties of representation, and because the IFFA executive board continued to hold and expend IFFA funds solely to advance its "political power and self[-]interest," the executive board was in breach of its fiduciary duties.[5] (Jt. App. at 41.)  Appellants sought to enjoin the IFFA executive board from expending additional IFFA funds and to require either the transfer of IFFA's funds to IAM to

---

[4]According to NMB mediator Maurice Parker, there were 5,139 employees eligible to vote in the election:  2,886 voted for IAM representation; 1,078 employees voted for IFFA representation; 657 voted for other representation; and 7 votes were void.  (See Jt. App. at 126.)

[5]In discussing the fiduciary duties owed by union officials, § 501(a) of the LMRDA reads in relevant part:  "The officers . . . and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group.  It is, therefore, the duty of each such person . . . to hold its money and property solely for the benefit of the organization and its members . . . ." 29 U.S.C. § 501(a).

be held in trust for the TWA flight attendants or the return of those assets to the flight attendants themselves.

On March 6, 1997, the NMB certified IAM as the TWA flight attendants' official collective bargaining representative. On April 9, 1997, the district court denied appellants' motion for a preliminary injunction. In denying the motion, the district court noted that the LMRDA only provides a cause of action for union members and determined that, as a rival union, IAM lacked standing to sue IFFA. The court also held that, although the individual appellants had standing, they were not entitled to an injunction under the factors enumerated in Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 112 (8th Cir. 1981) (en banc).

On appeal, appellants argue that the district court erred in determining that IAM lacked standing and that the individual appellants were not entitled to a preliminary injunction. We conclude that the individual appellants are entitled to a preliminary injunction under Dataphase and, therefore, we need not address the issue of whether IAM had standing to sue IFFA on behalf of its members.

II.

In reviewing the denial of a preliminary injunction, we ask whether the trial court abused its discretion. Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994). An appellant bears a "heavy burden" in seeking to overturn a district court's denial of a preliminary injunction. Rittmiller v. Blex Oil, Inc., 624 F.2d 857, 859 (8th Cir. 1980) (citation omitted). To evaluate a request for a preliminary injunction, the court considers (1) the probability of success on the

merits, (2) the threat of irreparable harm to the moving party, (3) the balance between the potential harm and any injury that an injunction would cause to other interested parties, and (4) whether the public interest supports the issuance of an injunction.  <u>Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.</u>, 997 F.2d 484, 485-86 (8th Cir. 1993) (citing <u>Dataphase</u>, 640 F.2d at 114).  In evaluating a request for preliminary injunction, no single factor is dispositive and all must be balanced to determine whether to grant the injunction.  <u>Id.</u> (citation omitted).

With respect to the first factor, the district court held that because appellants did not allege a specific breach of a fiduciary duty in their February 21, 1997 letter or file suit on behalf of IFFA, they failed to establish a probability of success on the merits. International Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Schimmel, No. 4:97CV357 JCH, mem. & order at 10-12 (E.D.Mo. Apr. 9, 1997) (hereinafter "Mem. & Order"). We disagree.

In determining whether appellants alleged a specific breach of fiduciary duty, we note that § 501(a) of the LMRDA provides that union officials have a duty to hold union funds "solely for the benefit of the organization and its members." 29 U.S.C. § 501(a). Moreover,

> [s]ection 501 should be interpreted broadly in order to insure that elected union officials fulfill their responsibilities as fiduciaries to their members, guard union funds from predators, and keep intact all such union funds except those expended in the legitimate operation of the union's business. The funds should be treated as trust funds belonging to the union's members.

United States v. Goad, 490 F.2d 1158, 1162 (8th Cir. 1974).

At oral argument, IFFA stated that the union funds at issue were approximately $1.6 million dollars. Generally, unions provide for the disposition of union funds upon decertification or dissolution in their constitution or by-laws. In such situations, the contract between the union and its members provides the mechanism to dispose

10

of union funds.  Here, however, IFFA made no provision for the disposal of union funds in the event its only members elected a new bargaining representative.  In the absence of such a provision, principles of equity dictate that a union should not retain funds that reflect the dues of its only members and use them in a way that does not advance those members' interests.  We therefore conclude that IFFA has a fiduciary duty to preserve union funds that reflect the dues paid by the TWA flight attendants and to use them

only to advance the interests of the flight attendants. Because we read the individual appellants' February 21, 1997 letter as charging IFFA with a breach of this duty owed to all TWA flight attendants, we conclude that they alleged a specific breach of a fiduciary duty for the purposes of § 501.

Next, we do not agree that the individual appellants may not prevail because they based their claim on a breach of a duty owed to them rather than to the union. In determining whether appellants filed suit to secure "relief for the benefit of the labor organization," 29 U.S.C. § 501(b), we note that "'[t]he members of a labor organization are the real owners of the money and property of such organizations and are entitled to a full accounting of all transactions involving such money and property.'" Goad, 490 F.2d at 1162 (quoting H.R. Rep. No. 741 at 2430 (1959), reprinted in 1959 U.S.C.C.A.N. 2318, 2324); see also Pignotti v. Local #3 Sheet Metal Workers' Int'l Ass'n, 477 F.2d 825, 832-35 (8th Cir. 1973). IFFA's members constituted a single group of like employees. Therefore, bringing suit for the benefit of the labor organization was indistinguishable from bringing suit for the benefit of the real owners of the union funds--the TWA flight attendants. Since the relief sought in this case is the transfer of IFFA funds to IAM to be held in trust for or distributed to TWA flight attendants,[6] appellants have brought suit for the benefit

---

[6]We note that at oral argument IAM stated that it would be willing to conduct a referendum among its members who were also members of IFFA before March 6, 1997. Such a referendum would allow the union members to decide whether IAM would hold IFFA funds in trust for the TWA flight attendants or whether those flight

of the labor organization.  Because appellants alleged a specific breach of fiduciary duty and filed suit on behalf of IFFA, the district court abused its discretion in determining that appellants did not establish a probability of success on the merits.

The second factor requires the moving party to show "the threat of irreparable harm."  <u>Dataphase</u>, 640 F.2d at 114.  Following its reasoning under the first factor, the

---

attendants would receive their pro rata share of those funds.

district court characterized § 501 as requiring irreparable harm to the union as a whole. The court then determined that, because appellants could only establish harm to themselves individually, they could not make the requisite showing. (Mem. & Order at 9.) Even if the district court properly characterized the irreparable harm inquiry, we do not agree that where a union only represents a single class of employees, harm to the union is sufficiently distinguishable from harm to the flight attendants.

Harm to the union as a whole may be the appropriate inquiry where a union represents members who perform different jobs or work for different employers. The interests of a union as a whole in those instances can vary significantly from the interests of a particular segment of the union's membership. Here, however, the union represented employees, all of whom performed the same job for the same employer. Because the TWA collective bargaining agreement constituted IFFA's sole representational obligation, IFFA's interests were the functional equivalent of the flight attendants' interests. Appellants contend, and we agree, that the TWA flight attendants will be irreparably harmed without an injunction because union funds reflecting their union dues would finance continued IFFA activities that do not advance the flight attendants' interests. Because appellants have demonstrated that the flight attendants would suffer irreparable harm without an injunction and because harm to the flight attendants is tantamount to harm to IFFA under § 501, we conclude that appellants made the requisite showing under the irreparable harm inquiry.

14

The third factor compares the potential harm to the moving party with the injury that granting the injunction would likely inflict on other interested parties. <u>Dataphase</u>, 640 F.2d at 114. The district court found that any harm to the appellants arising from continued IFFA activities did not outweigh the injury that granting the injunction would inflict. (Mem. & Order at 9-10.) We disagree.

Having determined that using the proceeds of the TWA flight attendants' union dues for any reason other than solely for the benefit of the flight attendants would cause

irreparable harm to the flight attendants, we move directly to the likely harm that an injunction might cause other interested parties. IFFA argues that it needs the flight attendants' funds to organize, to defend the present action, and to aid in the transition to IAM representation. This argument somewhat overstates IFFA's entitlement to those funds and the hardship that would be imposed by the preliminary injunction. We agree that IFFA is entitled to the funds necessary to effectuate the transfer of representation and to the attorneys' fees and costs that it has incurred to date in this litigation. No other purpose proposed by IFFA meets its duty to act solely for the benefit of the TWA flight attendants. Because IFFA is not entitled to the remainder of the funds,[7] IFFA suffers no injury from an injunction preventing it from expending those funds. As such, the harm to the flight attendants arising from allowing IFFA to continue its operations outweighs any injury that granting the injunction might inflict on any other party.

The final factor requires the district court to determine whether an injunction is in the public interest. Dataphase, 640 F.2d at 114. Stating that appellants failed to show that any IFFA board members converted funds for personal use, the district court found that the public interest would not be served by granting the preliminary injunction. (Mem. & Order at 12-13.) However, the overall purpose of the LMRDA as it relates to this case "is to protect union property and funds, to provide full disclosure of financial affairs of the union, [and] to

---

[7]IFFA is entitled to funds that reflect sources independent of union dues. Such sources include sales, raffles, and non-germane accounts.

16

establish self-help remedies for union members." <u>Goad</u>, 490 F.2d at 1165. For the above reasons, requiring union members to fund activities that do not advance their own interests does not serve the public interest. In this case, the public interest is better served by issuing the injunction.

Contrary to the findings of the district court, appellants have met their burden under <u>Dataphase</u>. Because the individual appellants have demonstrated that they are entitled to an injunction, we need not consider the issue of whether IAM has standing to seek the same remedy in this case.

## III.

For the foregoing reasons, we reverse and remand to the district court for a determination of the specific amount of IFFA funds necessary to conclude the union's representation of the TWA flight attendants as well as funds derived from sources other than union dues to which IFFA is otherwise entitled. We further direct the district court to order IFFA to transfer the remaining funds to IAM as trustee with the duty to return the funds transferred to the flight attendants who were former members of IFFA pursuant to a formula to be devised by IAM as trustee and approved by the district court.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.